### BURNS v. FRED L. DAVIS CO.

(Circuit Court of Appeals, First Circuit. February 16, 1921.)

No. 1483.

1. **Exemptions** ☞48(3)—**Fishermen's wages not subject to garnishment.**
   The provision of Rev. Laws Mass. c. 189, § 31, authorizing seizure under trustee process of wages of fishermen, *held* void, as in contravention of Seamen's Act March 4, 1915, § 12 (Comp. St. § 8325a).

2. **Seamen** ☞24—**State attachment not "sufficient cause" for refusal to pay wages.**
   Under Seamen's Act March 4, 1915, § 3 (Comp. St. § 8320), providing that every master or owner who refuses or neglects to pay a seaman his wages at the time therein required without sufficient cause shall pay him a sum equal to two days' pay for each and every day during which payment is delayed, and in view of the express provision of section 12 of the act (Comp. St. § 8325a), that seamen's wages shall not be subject to attachment or arrest from any court, the service of trustee process from a state court is not "sufficient cause" for refusal to pay a seaman his wages, and does not protect the owner from liability for the additional payment required by the statute.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sufficient Cause.]

Appeal from the District Court of the United States for the District of Massachusetts; James M. Morton, Jr., Judge.

Suit in admiralty by Clarence A. Burns against the Fred L. Davis Company. From the decree, libelant appeals. Reversed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Carlton W. Wonson, of Beverly, Mass., for appellant.

Frederick H. Tarr, of Gloucester, Mass., for appellee.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

BINGHAM, Circuit Judge. The libelant brings this proceeding to recover the sum due him for services rendered the libelee down to February 14, 1920, when he was discharged.

On or about December 10, 1919, the libelant shipped on the libelee's schooner Veda M. McKown for a voyage from the port of Gloucester to the Bay of Islands and other ports of Newfoundland and back to said port of Gloucester, for the purpose of obtaining a cargo of herring, and, in addition to his duties as one of the crew in manning the vessel, he was required to assist in handling the cargo and in salting, packing, and storing the same. He was to be paid wages at the rate of $70 a month, and had no share in the profits of the voyage. At the time of his discharge there was due him as wages, after deducting advances, $101.50. Shortly before his discharge the Gorton-Pew Vessels Company, of Gloucester, brought suit against the libelant in a district court of the commonwealth of Massachusetts, in which it trusteed the libelee, seeking to hold whatever sum was due the libelant as wages earned on the voyage. It also appeared that on November 26, 1918, the libelant had made an assignment to one Massell of his wages to the amount of $50, which was duly and seasonably recorded as required by law, and that notice of the assignment was given the libelee and demand made upon it for payment of said sum on the 13th of February, 1920.

The libelee, though requested, declined to pay the libelant his wages, or any part of the same, unless the attachment was discharged and the assignment canceled or released. Immediately after the libel was brought (February 20, 1920), the Gorton-Pew Vessels Company discharged the attachment, but Massell has never canceled or released his assignment.

Upon receiving notice of the discharge of the attachment the libelee offered to pay the libelant his wages, but he declined to accept them, unless certain statutory penalties and the costs of the libel were paid. This the libelee refused to do.

In the District Court it was decreed that the libelant should recover the sum of $101.90, with interest from the 13th of February, 1920, but without costs, and he appealed.

In his assignments of error he complains: (1) That the District Court erred in failing to find whether he served as a seaman or fisherman on the voyage, and that, if he served as a seaman, in failing to rule that there was no statute in Massachusetts authorizing the attachment of his wages; that, if he served as a fisherman, in failing to rule that the Massachusetts statute authorizing the attachment of fishermen's wages was void, and conferred no jurisdiction on the state district court to issue the writ of attachment; that his rights to wages arise out of a maritime contract and are wholly cognizable in the federal courts;

(2) that the court erred in finding that the libelant was not entitled to additional pay and expenses; and (3) that it erred in not awarding him costs.

The case was submitted upon the allegations of the libel, answer, and shipping articles. In the first article of the libel the libelant states that he "agreed to go as a seaman or fisherman on said voyage," but in the shipping articles it appears that he contracted to go "as a seaman or mariner of the crew schooner Veda M. McKown on a herring voyage to Bay of Islands and other port or ports of Newfoundland and back to Gloucester," and that in addition, as a member of the crew, he agreed "to handle all fish and cargo for the benefit of said voyage." In the third article of the libel he alleges that he "served as a seaman and as one of the crew of said vessel on said voyage." The allegation that he "served as a seaman" is not specifically denied in the answer, and the answer nowhere avers that the libelant served as a fisherman, and not as a seaman, or that the voyage was made for the purpose of catching fish. We think that the only reasonable conclusion to be drawn from the evidence is that the libelant served as a seaman and that the wages in controversy are due him as such.

[1] In 1915 Congress repealed section 4536 of the Revised Statutes, and enacted in its stead section 12 (38 Stat. at Large, c. 153, § 12, p. 1169 [Comp. St. § 8325a]), which reads as follows:

"Sec. 12. That no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court, and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage made prior to the accruing thereof shall bind the party making the same, except such allotments as are authorized by this title. This section shall apply to fishermen employed on fishing vessels as well as to seamen: Provided, that nothing contained in this or any preceding section shall interfere with the order by any court regarding the payment by any seaman of any part of his wages for the support and maintenance of his wife and minor children. Section forty-five hundred and thirty-six of the Revised Statutes of the United States is hereby repealed."

The language of section 12 is not materially different from that of section 4536 of the Revised Statutes, except that it includes the specific provision that—

"This section shall apply to fishermen employed on fishing vessels as well as to seamen."

But the effect to be given to the language of section 12, as compared with the equivalent language of section 4536, is quite different, for the Act of June 9, 1874 (18 Stat. at Large, c. 260, p. 64 [Comp. St. § 8291]), made section 4536 inapplicable to seamen employed on vessels—

"engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage."

By the enactment of section 12, which repealed section 4536 of the Revised Statutes, the limitation placed upon the language of that section by the Act of June 9, 1874, has been removed. Inter-Island Navigation Co. v. Byrne, 239 U. S. 459, 463, 36 Sup. Ct. 132, 60 L. Ed. 382.

In Wilder v. Inter-Island Navigation Co., 211 U. S. 239, 246–249, 29 Sup. Ct. 58, 61 (53 L. Ed. 164, 15 Ann. Cas. 127), Mr. Justice Day considered the language of section 4536 on the assumption that the Act of June 9, 1874, did not change or modify that section, so far as it related to vessels engaged in the coastwise trade, and after stating that "this statute is not to be too narrowly construed, but rather to be liberally interpreted with a view to affecting the protection intended to be extended to a class of persons whose improvidence and prodigality have led to legislative provisions in their favor, and which has made them, as Mr. Justice Story declared, 'the wards of the admiralty,'" and after restating some of the broad provisions of the act, he said:

"Section 4536, therefore, has the effect of not only securing the wages of the seaman from direct attachment or arrestment, but further prevents the assignment or sale of his wages, except in the limited cases we have mentioned, and makes the payment of such wages valid notwithstanding any 'attachment, incumbrance or arrestment thereon.' It seems to be clearly inferable from these provisions that wages which have thus been carefully conserved to the seaman were not intended to be subject to seizure by attachment, either before or after judgment."

And again, after commenting upon certain other provisions of the act, he said:

"We think that these provisions, read in connection with section 4536, necessitate the conclusion that it was intended not only to prevent the seaman from disposing of his wages by assignments or otherwise, but to preclude the right to compel a forced assignment, by garnishee or other similar process, which would interfere with the remedy in admiralty for the recovery of his wages by condemnation of the ship. These provisions would be defeated if the seaman's wages, to be recovered at the end of the voyage, could be at once seized by an execution or attachment. * * * The evident purpose of the federal statutes, that the seaman shall have his remedy in admiralty, would be defeated, and the seaman, in many cases, be turned ashore with nothing in his pocket, because of judgments seizing his wages, rendered it may be, upon improvident contracts, from which it was the design and very purpose of the admiralty law to afford him protection. * * *

"We think that section 4536, construed in the light of the other provisions of the same title, prevents the seizure of the seaman's wages, not only by writs of attachment issued before judgment, but extends the like protection from proceedings in aid of execution, or writs of attachments, such as are authorized by the Hawaiian statutes, after judgment."

The statute (Rev. L. Mass. c. 189, § 31) under which it is sought to justify the process issued from the state court trusteeing the wages in question reads as follows:

"No person shall be adjudged a trustee in the following cases: * * *
"Seventh. By reason of money or credits due or accruing to the defendant as wages or lay as a seaman; but the provisions of this clause shall not apply to the wages or lay due or accruing to a fisherman."

As the wages due the libelant accrued to him as a seaman, and not as a fisherman, the process was not authorized by the state statute, and was a nullity.

But, if it be assumed that the wages due the libelant accrued to him as a fisherman, we do not think that the state statute which purports to authorize such an attachment can be valid. Section 12 (Act of March 4, 1915) expressly states that its provisions shall "apply to fish-/ermen employed on fishing vessels as well as to seamen." The state statute is therefore in open conflict with section 12, and, if valid, would sanction the taking of action in direct contravention with its provisions. Such being the situation, and Congress having the paramount power to fix and determine the maritime laws which shall prevail throughout the country, the state statute must yield if the subject-matter affected by the statute is maritime.

The contract of the libelant, whether seaman or fisherman, was maritime in character (Union Fish Co. v. Erickson, 248 U. S. 308, 39 Sup. Ct. 112, 63 L. Ed. 261), and would be within the power of Congress to regulate and protect as it deemed wise (In re Garnett, 141 U. S. 1, 14, 11 Sup. Ct. 840, 35 L. Ed. 631). Therefore the state statute, being in direct conflict with section 12, would be void, and the process of the state district court would stand the same. Southern Pacific R. R. Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834; Patterson v. The Eudora, 190 U. S. 169, 23 Sup. Ct. 821, 47 L. Ed. 1002.

[2] By section 3 of the Act of March 4, 1915 (38 Stat. at Large, c. 153, p. 1164 [Comp. St. § 8320]), section 4529 of the Revised Statutes was amended to read as follows:

"Sec. 4529. The master or owner of any vessel making coasting voyages shall pay to every seaman his wages within two days after the termination of the agreement under which he was shipped, or at the time such seaman is discharged, whichever first happens; and in case of vessels making foreign voyages, or from a port on the Atlantic to a port on the Pacific, or vice versa, within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens; and in all cases the seaman shall be entitled to be paid at the time of his discharge on account of wages a sum equal to one-third part of the balance due him. Every master or owner who refuses or neglects to make payment in the manner hereinbefore mentioned without sufficient cause shall pay to the seaman a sum equal to two days' pay for each and every day during which payment is delayed beyond the respective periods, which sum shall be recoverable as wages in any claim made before the court; but this section shall not apply to masters or owners of any vessel the seamen of which are entitled to share in the profits of the cruise or voyage."

This section, prior to the amendment of 1915, is found in section 4 of the Act of December 21, 1898 (30 Stat. at Large, c. 28, p. 756 [Comp. St. § 8320]), The only change effected by the amendment of 1915 is to require the master or owner, who fails to comply with its provisions, to pay the seaman for "two days," instead of one, for every day he is in default.

By section 26 of the act of 1898 it is provided that section 4 of said act, which amended section 4529, should not apply to fishing or whal-

ing vessels or yachts. In some of the sections amended by the act of 1915 provisions were inserted to the effect that the section should not apply to fishing or whaling vessels or yachts, but such was not the case as to all the sections referred to in section 26. The act of 1915 does not expressly repeal section 26, and it may be doubtful whether, as applied to some of the sections referred to, it is repealed by implication. But, however this may be, we do not regard it essential to the determination of the question whether the libelant in this case can recover the additional pay, as the vessel upon which the wages were earned was making a foreign voyage to obtain a cargo, and not on a fishing trip.

The remaining question under section 3 of the act of 1915, is whether the libelee, in withholding the wages, acted without sufficient cause. He says that he was justified in declining to pay the wages for the reason that he was in duty bound to recognize the authority of the process of the state district court. If his position is right in this respect, then the provisions of the federal law enacted for the benefit of seamen and in the exercise of its maritime power may at any time be set at naught by a state process, and its provisions rendered valueless.

For many years there has been no statute in Massachusetts authorizing the attachment of seamen's wages, and it nowhere appears that the libelee was not fully aware of this, and of the provisions of section 12 of the act of 1915 forbidding the attachment of either seamen's or fishermen's wages on process issued from any court, and protecting him in the payment of such wages, notwithstanding any previous assignment or attachment.

Under the circumstances, we think the conclusion should be that the libelee withheld the wages without sufficient cause, and that the libelant should recover the additional pay contemplated by the statute and his costs.

The decree of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion, with costs to the appellant in both courts.