140 So. 611

## DUGGAR v. MOBILE & GULF NAV. CO.
### I Div. 2.

Court of Appeals of Alabama.
Oct. 27, 1931.

Rehearing Denied Nov. 17, 1931.

A. S. Whiting and L. Berman, both of Mobile, for appellant.

Frank J. Yerger, of Mobile, for appellee.

SAMFORD, J.

The following statement of the facts is disclosed by the record:

The original appellant plaintiff, L. L. Duggar, now deceased, brought suit against P. M. Tindel, defendant, in the circuit court of Mobile county, Ala., on October 14, 1929.

A writ of garnishment was subsequently sued out, with bond, the writ being served on appellee garnishee on October 29, 1929, and the defendant, P. M. Tindel, served with notice thereof.

The answer of the appellee garnishee set up that the defendant, P. M. Tindel, was, at the time of the service of the writ of garnishment on it, in its employ as a pilot or mate, on one of its vessels or tugs plying on the Alabama river and Mobile river, and asked a discharge as garnishee because of the exemption from attachment of seamen's wages, as provided by Act of Congress as set forth in United States Statutes at Large, volume 38, part 1, page 1164, chapter 153 (U. S. C., title 46, chapter 18, § 601 [46 USCA § 601]).

On March 29, 1930, appellee garnishee filed, in lieu of an oral examination, by consent of the parties, a supplemental answer to the writ of garnishment, showing that, on February 15, 1930, it had paid to the defendant, P. M. Tindel, wages in the sum of $100 earned by the defendant, P. M. Tindel, in its employ as seaman or pilot on one of its tugs, while running or being operated on either or both of said rivers; that on February 28, 1930, it had paid to the defendant, P. M. Tindel, wages in the sum of $77.45; and that on March 15, 1930, it had paid to the defendant, P. M. Tindel, wages in the sum of $87.50; that it then had on hand wages earned by the defendant, P. M. Tindel, through March 21, 1930, in the sum of $40.85, all of said wages having been earned by the defendant while in its employ as mate or seaman on one of its said tugs, while running or being operated on either or both of said rivers; and that, therefore, said wages, so earned by the defendant, P. M. Tindel, as such seaman, either as pilot or mate, as aforesaid, in its employ, were not subject to garnishment in this cause.

On March 29, 1930, the original appellant plaintiff, L. L. Duggar, filed a motion for judgment against the appellee garnishee on its answer and supplemental answer in an amount to satisfy the judgment indebtedness and costs.

On July 26, 1930, the trial court discharged the appellee garnishee, holding, in effect, that the defendant, P. M. Tindel, was entitled to his exemptions as such seaman, and that his salary or wages was not subject to garnishment by reason of the fact of his employment as such seaman, and denied the motion of the appellant plaintiff, L. L. Duggar, from which ruling this appeal is taken.

By a very comprehensive Act of Congress, approved June 7; 1872, entitled: "An Act to authorize the Appointment of Shipping-commissioners by the several Circuit Courts of the United States, to superintend the Shipping and Discharge of Seamen engaged in Merchant Ships belonging to the United States, and for the further Protection of Seamen," (17 Stat. 262) Congress prescribed regulations concerning the employment, wages, and treatment of seamen. Of that act, section 61 (17 Stat. 276) has application here and is as follows: "That no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of such wages, or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of such wages, or of salvage made prior to the accruing thereof, shall bind the party making the same, except such advanced securities as are provided for in this act."

On June 9, 1874 (18 Stat. 64 [46 USCA § 544]), Congress passed an act in reference to the operations of the Shipping Commissioners' Act approved June 7, 1872, providing: "None of the provisions of an Act entitled 'An Act to authorize the appointment of shipping commissioners by the several circuit courts of the United States to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen' shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage."

Without material modification, section 61 of the Act of 1872, supra, became section 4536 of the Revised Statutes, enacted June 20, 1874, as follows: "No wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages, or of any attachment, incumbrance, or arrestment thereon; and no as-signment or sale of wages, or of salvage, made prior to the accruing thereof, shall bind the party making the same, except such advance securities as are authorized by this Title."

But, carried with this revision, was the following limitation, being section 5601 of the Revised Statutes, as follows: "The enactment of the said revision is not to affect or repeal any act of Congress passed since the 1st day of December one thousand eight hundred and seventy-three, and all acts passed since that date are to have full effect as if passed after the enactment of this revision, and so far as such acts vary from, or conflict with any provision contained in said revision, they are to have effect as subsequent statutes, and as repealing any portion of the revision inconsistent therewith."

By these several acts we are convinced that it was the intention of the Congress to eliminate vessels engaged in coastwise trade, from the operation of the act approved June 7, 1872. The purpose of the act of June 7, 1872, was to protect seamen employed on vessels included in the act, in respect to their employment, treatment, and wages, but by the express terms of the act of June 9, 1874, this protection was rendered inapplicable to seamen engaged in the ordinary coastwise or river trade. Again the same intention evidenced by Congress in enacting section 5601 of the Revised Statutes, supra, by the terms of which the act of June 9, 1874, was stated: "To have full effect as if passed after the enactment of this revision, and so far as such acts vary from, or conflict with any provision contained in said revision, they are to have effect as subsequent statutes, and as repealing any portion of the revision inconsistent therewith."

In the case of the Inter-Island Steam Navigation Co., Ltd., v. Byrne et al., 239 U. S. 459, 36 S. Ct. 132, 60 L. Ed. 382, the identical point at issue in the case at bar was thoroughly discussed. This case was in error to the Supreme Court of the Territory of Hawaii to review a judgment which affirmed a judgment of the District Court of Honolulu in favor of plaintiff in a garnishment suit, resulting in an affirmance by the Supreme Court of the United States. The opinion of the court, by Mr. Justice McReynolds, reads, in part, as follows:

"Defendant in error Byrne brought suit against Kaleiki in the district court of Honolulu and served the navigation company with a garnishee summons in accordance with the local statute. Answering, the company set up that Kaleiki was hired directly by it (not through a shipping commissioner) as a mate on the 'Claudine,' plying only in the inter-island coast trade, and asked a discharge because of the exemption from attachment of seamen's wages by § 4536, Revised Statutes of the United States (Comp. Stat. 1913, § 8325). The trial court held that subsequent

legislation excluded seamen engaged in such coastwise trade from the exemption, and rendered judgment against both Kaleiki and the company. * * *

"The fundamental purpose of the act of 1872 was to afford protection to seamen in respect to their treatment and wages. The act of 1874 by its express terms rendered the provisions of the earlier act inapplicable to vessels in the ordinary coastwise trade (United States v. The Grace Lothrop, 95 U. S. 527, 532, 24 L. Ed. 514, 515), and the suggested narrow construction would tend to defeat the particular end in view,—the relief of vessels making relatively short voyages, with frequent opportunities for reaching ports, from burdensome requirements not then deemed essential to the welfare of seamen employed thereon. Certainly, we think, the provisions in the act of 1872 having direct reference to wages (including those in § 4536, Rev. Stat., Comp. Stat. 1913, § 8325), because of their intimate connection with the navigation of vessels, must be considered as applicable thereto and therefore included within the scope of the amendment of 1874. Subsequent legislation clearly indicates that Congress entertained this view. It would be difficult to account for the acts of 1886, 1890, 1895, and 1897, supra, upon any other theory."

Going further to the intent of Congress in this connection, we quote from the opinion delivered by Mr. Justice Clifford in the case of the United States v. The Grace Lothrop, supra, as follows:

"Explicit as that provision is, it may well be contended that it applies only to the twelfth section of the original act; but Congress, in the month of June, 1874, passed another amendatory act, by which it is provided that none of the provisions of the original act shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise or voyage.

"Though the act last referred to is subsequent in date to the supposed wrongful acts of the respondent, as alleged in the libel, yet the language of the act is in terms an explicit declaration that Congress never intended that the original act should apply to vessels engaged in any part of the coasting trade, except that between the Atlantic and Pacific coasts."

Coming to the current state of the law on the subject at bar, we find that Congress, on June 30, 1926, adopted an act to "consolidate, codify, and set forth the general and permanent laws of the United States in force December seventh, one thousand nine hundred and twenty-five," (44 Stat. 777) said consolidation and codification being known as the United States Code, and that the two sections in question, namely: The Act of June 9, 1874, chap. 260, 18 Statutes at Large, p. 64, and the Act of March 4, 1915, chap. 153, § 12, 38 Statutes at Large, part 1, pp. 1164, 1169, were duly included therein and have remained unchanged to the present date, being known and designated in said Code, respectively, as U. S. C., title 46, chapter 18, § 544 (46 USCA § 544), and U. S. C., title 46, chapter 18, § 601 (46 USCA § 601). The inclusion of these two sections in the present consolidation and codification is but further evidence, which should be most convincing, of the clear intent and purpose of Congress to continue them in full force and effect, their known judicial construction having been settled, the Congress, in adopting the Code, being presumed to have known the judicial construction which had theretofore been placed thereon.

In Duramus v. Harrison, 26 Ala. 326, the Supreme Court of the state of Alabama has held that the Legislature of that state in adopting the Code, must be presumed to have known the judicial constructions which had been placed on the former statutes; and therefore the re-enactment in the Code of provisions substantially the same as those contained in a former statute is a legislative adoption of their known judicial construction. And this case was cited with approval by Mr. Justice Bradley in the case of McDonald v. Hovey et al., 110 U. S. 619, 4 S. Ct. 142, 28 L. Ed. 269.

Taking the two sections from the United States Code, being sections 544 and 601, title 46, chapter 18, together with the history and growth of these sections from the act of 1872 to the present, together with the decisions thereon, we are clear to the opinion that, by the act of 1874, coastwise vessels and men employed on them, except certain ones specifically excepted, were taken out of the general scheme as originally contemplated by the act of 1872, supra, and remains so by the present statute.

It follows that, under these facts, the court erred in its judgment, and should have rendered a judgment for plaintiff.

The judgment is reversed, and the cause is remanded.

Reversed and remanded.