9 So.2d 23

**WATERMAN S. S. CORPORATION v.
BRILL et al.**

1 Div. 167.

Supreme Court of Alabama.

May 14, 1942.

A. S. Whiting, of Mobile, opposed.

McCorvey, McLeod, Turner & Rogers and T. M. Stevens, all of Mobile, for petitioner.

BOULDIN, Justice.

Are the wages of seamen engaged in the ordinary coastwise trade subject to garnishment?

The Court of Appeals in the opinion now for review held in the affirmative on the authority of Duggar v. Mobile & Gulf Nav. Co., 25 Ala.App. 2, 140 So. 611, sustained on certiorari on grounds stated in opinion, 224 Ala. 359, 140 So. 614.

Quite properly the Court of Appeals calls our attention to grounds upon which the soundness of former decisions are challenged; and suggests: "were the matter, now before us, original, we would be impressed that a difficult question was presented."

The question now for our decision is whether, in the Duggar case, this court and the Court of Appeals misconceived the shipping laws of the United States touching the immunity of seamen's wages from garnishment.

For continuity of study of the governing statutes, we quote from the opinion of the Court of Appeals in Duggar v. Mobile & Gulf Nav. Co., supra:

"By a very comprehensive Act of Congress, approved June 7, 1872, entitled: 'An Act to authorize the Appointment of Shipping-commissioners by the several Circuit Courts of the United States, to superintend the Shipping and Discharge of Seamen engaged in Merchant Ships belonging to the United States, and for the further Protection of Seamen' (17 Stat. 262), Congress prescribed regulations concerning the employment, wages, and treatment of seamen. Of that act, section 61 (17 Stat. 276) has application here and is as follows: 'That no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court; and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of such wages, or of any attachment, incumbrance, or arrestment thereon; and no assignment or sale of such wages, or of salvage made prior to the accruing thereof, shall bind the party making the same, except such advanced securities as are provided for in this act.'

"On June 9, 1874 (18 Stat. 64, 46 U.S.C. A. § 544), Congress passed an act in reference to the operations of the Shipping Commissioners' Act approved June 7, 1872, providing: 'None of the provisions of an Act entitled "An Act to authorize the appointment of shipping commissioners by the several circuit courts of the United States

to superintend the shipping and discharge of seamen engaged in merchant ships belonging to the United States, and for the further protection of seamen" shall apply to sail or steam vessels engaged in the coastwise trade, except the coastwise trade between the Atlantic and Pacific coasts, or in the lake-going trade touching at foreign ports or otherwise, or in the trade between the United States and the British North American possessions, or in any case where the seamen are by custom or agreement entitled to participate in the profits or result of a cruise, or voyage.'"

On March 4, 1915, Congress passed "An Act To promote the welfare of American seamen in the merchant marine of the United States," &c. 38 Statutes at Large, 1164.

This act was a rather comprehensive treatment of shipping laws, enacting new provisions, amending, repealing and re-enacting sundry sections of the Revised Statutes.

Section 12 of this Act read: "That no wages due or accruing to any seaman or apprentice shall be subject to attachment or arrestment from any court, and every payment of wages to a seaman or apprentice shall be valid in law, notwithstanding any previous sale or assignment of wages or of any attachment, encumbrance, or arrestment thereon; and no assignment or sale of wages or of salvage made prior to the accruing thereof shall bind the party making the same, except such allotments as are authorized by this title. This section shall apply to fishermen employed on fishing vessels as well as to seamen: Provided. That nothing contained in this or any preceding section shall interfere with the order by any court regarding the payment by any seaman of any part of his wages for the support and maintenance of his wife and minor children. Section forty-five hundred and thirty-six of the Revised Statutes of the United States is hereby repealed." 38 Statutes at Large, p. 1169.

Section 4536 of Revised Statutes merely codified Section 61 Act of 1872, supra.

So Section 12 of Act of 1915, supra, repealed the original Section 61 Act of 1872, and re-enacted the same, with extension of exemption to include wages of "fishermen employed on fishing vessels as well as to seamen." Thus modified Section 12, supra, became Section 601 of United States Code of 1926. U.S.C.A. Title 46, § 601.

The effect of these several statutes, in the light of their background, is determinative of the question before us.

4 Am.Juris. p. 756, § 323, reads: "Seamen's wages, whether earned in the coastwise trade or otherwise, are not subject to attachment or garnishment at the instance of a creditor in an action at law. The exemption is prescribed by Federal statute."

Wilder, Assessor, v. Inter-Island Steam Navigation Company, Limited, 211 U.S. 239, 29 S.Ct. 58, 62, 53 L.Ed. 164, 15 Ann.Cas. 127, cited as authority to this text, deals with the subject of the immunity of wages of seamen generally, the policy of the law in that regard, but, expressly omits consideration of the state of the law as to wages of seamen in the coastwise trade, because not presented. The case refers to the seaman's lien on the ship as a related safeguard, and quotes from Ross v. Bourne, D. C., 14 F. 858, 862: "'The sailor's only means of subsistence on shore are his wages earned at sea. If these may be stopped by an attachment suit the instant his ship is moored to the wharf, a new hardship is added to a vocation already subject to its full share of the ills of life.'"

We apprehend the author of the text in 4 Am.Juris., supra, deemed the rationale of the Wilder case, supra, important in connection with the annotation in 56 A.L.R. 628, which we quote: "Seamen's wages, whether earned in the coastwise trade or otherwise, are not subject to garnishment at the instance of a creditor in an action at law. McCarty v. The City of New Bedford (1880; D.C.) 4 F. 818 [820]. The reason for the rule is thus stated: 'The rule exempting wages from garnishment springs out of the sharp necessity which the nature of his calling casts upon the seaman when he leaves his ship. A seaman is compelled to be improvident. While at sea the ship is his house, and his daily bread he must receive from the hands of the ship's master. His wages cannot be paid him day by day, but must be allowed to accumulate in the hands of an unknown owner. When the voyage is over he must at once provide himself with temporary shelter and with food, and for that purpose he must have money in his hand. Therefore it is that his wages are nailed to the ship, and therefore it is that, as in the ancient days of the consulate, so now, the law is forced to declare that no man can be permitted to say anything or do anything to deprive the seaman of the right to demand his wages when he leaves the ship.'"

The case of McCarty v. The City of New Bedford, supra, opinion by District Judge Benedict of New York, is one of the most informing we have found in the books. This decision was in 1880, while the statutes of 1872 and 1874 were in effect, and before the re-enactment of 1915. We quote: "The principal question thus presented is whether the wages earned by a seaman in the coastwise trade of the United States are subject to garnishment at the instance of a creditor of the seaman in an action at law brought in a state court."

Tracing the immunity of seamen's wages among maritime nations from early times, it is observed that Section 61 of our act of 1872 was a substantial copy of the act 17–18 Victoria, c. 104, § 233; that this act of Parliament gave expression to the prevailing law of England prior thereto, and, in the opinion of Judge Benedict, the act of 1874 was not directed to seamen's wages; but, if so, it was merely a repealing act in that regard, leaving in force the seamen's wage laws of the United States without the act of 1872, under which the wages of seamen in the coastwise trade were immune from garnishment the same as other seamen.

It cannot be said the pre-existing laws of the United States, as construed by the state courts, were uniformly held to exempt wages of seamen in the coastwise trade. See Annotation 56 A.L.R. 628.

But the policy behind the exemption of seamen's wages as forcibly expressed in the McCarty case, supra, is in harmony with many leading authorities, including the Wilder case, supra. The seaman has long been declared "the ward of admiralty." We observe that in our own jurisdiction, Judge Toulmin, in 1910, dealing with Section 4536 Revised Statute (Section 61 act of 1872 codified), declared the law, as summarized in the headnote to The Amelia, D.C., 183 F. 899, as follows: "Rev.St. § 4536 (U.S.Comp.St.1901, p. 3082), provides that no wages due or accruing to any seaman shall be subject to attachment or arrest from any court, and that every payment of wages to a seaman shall be valid at law notwithstanding any attachment thereof. Held, that such section was applicable as well to a seaman operating on coastwise vessels as on merchant vessels generally, and hence it was no answer to a libel in admiralty against a tug engaged in the coasting trade for a

seaman's wages earned thereon that the wages had been attached by garnishment."

Related statutes safeguarding seamen's contracts and prompt payment of wages, secured by a seaman's lien on the vessel, are all mentioned in cases holding such wages free from seizure by garnishment.

■ In Inter-Island Steam Navigation Company, Limited, v. Byrne, 239 U.S. 459, 36 S.Ct. 132, 134, 60 L.Ed. 382, the Supreme Court of the United States, the final authority on such questions, dealt directly with garnishment of wages of a seaman engaged in the coastwise trade prior to the act of 1915.

The following propositions are clearly decided in that case.

1st. Section 61 of the act of 1872 exempted the wages of all seamen, including those engaged in the coastwise trade.

2nd. The act of June 9, 1874, amended the act of 1872, rendering it inapplicable to the wages of seamen engaged in the coastwise trade.

3rd. Section 4536 of the Revised Statutes worked no change in the law in that regard, because the act of June 22, 1874, enacting the Revised Statutes into law left all laws passed between December 1, 1873 and June 22, 1874, in full effect as if passed thereafter.

That case arose before the act of March, 1915, supra, was passed, but was decided thereafter. The opinion by Justice McReynolds concludes: "The particular point now presented was reserved in Wilder v. Inter-Island Navigation Co., 211 U.S. 239, 245, 29 S.Ct. 58, 53 L.Ed. 164, 15 Ann.Cas. 127. It has become of less importance since the act of March 4, 1915, chap. 153, 38 Stat. 1164, 1169, wherein the provisions of § 61 of the act of 1872 were re-enacted."

■ Seems evident the court had in mind the well known rule that the re-enactment of a statute in the same terms as the original has the same meaning as the original, eliminating any amendment in the meantime. See, Lindsay v. United States Savings & Loan Association et al., 120 Ala. 156, 24 So. 171, 42 L.R.A. 783; Bertha Nelson v. Bradley G. Brown, 242 Ala. 515, 7 So. 2d 572.

The case of Burns v. Fred L. Davis, Co., 271 F. 439, decided in 1921, by the U. S. Circuit Court of Appeals of First Circuit, an Appellate Court next in rank to the U. S. Supreme Court, we think, does hold that the

act of 1915, supra, did repeal the amendatory act of 1874, so far as that act struck down the exemption of wages of seamen in coastwise trade. That Congress meant to extend the immunity to fishermen's wages, and deny it to seamen in the coastwise trade, a class within the terms of the statute, as defined by Section 65 of the original act of 1872, and now § 713, Title 46 U.S.C.A., does not find support in reason or authority. See, Blackton v. Gordon, 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 515.

The case of United States v. The Grace Lothrop, 95 U.S. 527, 24 L.Ed. 514, dealt with the shipping commissioners' provisions of the act of 1872, especially Section 12 of that act. This original act, 17 Statutes at Large 262 et seq., was in three parts. Sections 1 to 50 dealt with shipping commissioners, their appointment, functions, &c. Sections 51 to 60 dealt with "Discipline of Seamen." Sections 61 to 65, pp. 276, 277, dealt with "Protection of Seamen," the protection of seamen's wages being of first concern. The exemption of seamen's wages in the coastwise trade was not involved, and apparently not in the mind of the court in using the broad language quoted by our Court of Appeals in the Duggar case, 25 Ala.App. at page 5, 140 So. at page 613.

The Grace Lothrop case was cited in Inter-Island Nav. Co. v. Byrne, supra, 239 U.S. 462, 36 S.Ct. 133, 60 L.Ed. 382, from which we quote: "The fundamental purpose of the act of 1872 was to afford protection to seamen in respect to their treatment and wages. The act of 1874 by its express terms rendered the provisions of the earlier act inapplicable to vessels in the ordinary coastwise trade (United States v. The Grace Lothrop, 95 U.S. 527, 532, 24 L.Ed. 514, 515)."

"That Congress never intended that the original act should apply to vessels engaged in any part of the coasting trade, except that between the Atlantic and Pacific coasts," if applied to the exemption of seamen's wages in the coastwise trade, is inconsistent with the quoted language of the later case.

■ Duggar v. Mobile & Gulf Nav. Co., 224 Ala. 359, 140 So. 614, proceeds on the hypothesis that Section 12 of the act of 1915, supra, did repeal the act of June 9, 1874, in so far as the latter had limited the act of 1872 as regards wages of seamen in the coastwise trade, and bases

our holding upon the assumption that both the statutes 1915 and 1874 had been re-enacted by the U. S. Code of 1926. Clearly this view, in keeping with the holding of the Court of Appeals then under review, was based on the idea that the U. S. Code of 1926 was an enactment of the laws embodied therein, like unto Alabama Codes enacted pursuant to our Constitution. In this we overlooked the fact that the United States Code was merely a compilation, prima facie setting out the laws as they then existed. The adopting act now found on page 4, Title 1, U.S.C.A., in Section 2(a), declared: "(a) The matter set forth in the Code, evidenced as hereinafter in this section provided, shall establish prima facie the laws of the United States, general and permanent in their nature in force on the 7th day of December, 1925; but nothing in this Act shall be construed as repealing or amending any such law, or as enacting as new law any matter contained in the Code. In case of any inconsistency arising through omission or otherwise between the provisions of any section of this Code and the corresponding portion of legislation heretofore enacted effect shall be given for all purposes whatsoever to such enactments."

This enacting statute, exact and clear within itself, is made emphatic in the decisions of the Supreme Court. "Inclusion in the Code does not operate as a re-enactment," said Chief Justice Hughes in Smiley v. Holm, 285 U.S. 355, 373, 52 S.Ct. 397, 402, 76 L.Ed. 795.

Said Justice Cardozo in Warner v. Goltra, 293 U.S. 155, 161, 55 S.Ct. 46, 49, 79 L.Ed. 254: "The compilers of the Code were not empowered by Congress to amend existing law, and doubtless had no thought of doing so. As to that the command of Congress is too clear to be misread. 1 U.S.C.A. (title page) § 2(a), 44 Stat. p. 1, pt. I." The statute is set out in note 4.

So, unquestionably the controlling inquiry is: What was the law of the subject in hand when the U. S. Code was adopted?

If it be suggested that by the publication of both Sections 544 and 601 of the Code, it is to be implied that the compilers of the Code, and maybe Congress, held the view that both Sections had a field of operation as existing law, a sufficient answer is they clearly do each have a field of operation. The act of 1915, Section 12, dealt only with the matter of seamen's wages, while the act of 1874 was still in effect as regards the place of shipping commissioners in coastwise shipping, &c.

We have given the case much consideration because of the importance of the question as affecting ship owners as well as seamen.

It appears from New York and New Jersey cases cited in the opinion of the Court of Appeals that such decisions are in direct conflict. The opinion of our Court of Appeals in the Duggar case is relied upon as authority in New Jersey.

So, in New York wages of coastwise seamen are protected from garnishment, while in New Jersey they are not.

This situation in the application of Federal shipping laws, uniform in their rightful application, calls to us to carefully reconsider our contribution to such situation. The doctrine of stare decisis can have no place in state decisions construing Federal laws. Supreme Court of the United States, as the final authority, can overturn any number of state decisions. Our task is to construe the statutes in keeping with the thought of that court, if ascertainable, and if not, in keeping with sound reason and authority as we see it.

We conclude our decisions in the Duggar case were in error, and should be now overruled, and the wages of seamen in the ordinary coastwise trade held not subject to garnishment.

Writ of certiorari granted.

GARDNER, C. J., and THOMAS, BROWN, and LIVINGSTON, JJ., concur.

FOSTER, J., dissents.

KNIGHT, J., not sitting.

FOSTER, Justice (dissenting).

This is a question of legislative interpretation by a court whose opinion is not conclusive and is only effective until the Supreme Court of the United States shall speak. It is our province to make the interpretation which we think will accord with that of the court which has final authority. As we undertake that task, there are only two considerations to guide us. One is the trend of judicial opinion manifested in that court of final jurisdic-

tion, or two, in the absence of any clear direction from that source, to make the interpretation as we think is consistent with the rules and principles which are usually applied to legislative construction. We remember that it is not our province to make statutory law, but to interpret the meaning of the legislative authority which enacted it, and that only when its meaning is ambiguous.

This writer wishes to say that the opinion written for this Court on this question in Duggar v. Mobile Gulf Nav. Co., 224 Ala. 359, 140 So. 614, was on an assumption which was not well supported. I thought, without looking, and without argument to a different effect made in the case, or referred to in the opinion of the Court of Appeals in the same case then under review (140 So. 611),[1] that the U.S. C.A. of 1926 was an authoritative statement of the laws of the United States in effect at that time. But it now appears that such was not the effect of that Code. But in its adoption it is provided that "No new law is enacted and no law repealed. It is prima facie the law. It is presumed to be the law. The presumption is rebuttable."

In Title 46, section 544, there is carried that feature of the act of 1874 which provides that none of the provisions of the act of 1872 shall apply to the coastwise seamen except as stated. And in the same title, section 601, there is carried the act of 1915 applicable to all seamen as when it was then enacted, but with the addition of fishermen. The act of 1915 did not refer to that of 1874, and did not expressly repeal it, as it did the act of 1872 by repealing section 4536, Revised Statutes. It could have done so by sufficient implication. I think it is doubtful and not the necessary effect of the act of 1915. We note that the act of 1874 did not re-enact the act of 1872 with an amendment that it shall not apply to coastwise seamen. It was not in the form of an amendment. It was an original act whereby none of the provisions of the act of 1872 should apply to coastwise seamen. This was permissible, though if an Alabama act were thus set up it would violate section 45 of the Alabama Constitution.

The act of 1915 did not refer to that of 1874, and did not expressly repeal any feature of it, though it did repeal the act of 1872, as it re-enacted it. It took the provisions of the act of 1872 and added fishermen and re-enacted it as thus amended. I think it could well be if Congress had intended to repeal the act of 1874, it would have been so expressed in exact terms or certainly in general terms. But there was no general repealing clause and no reference to the act of 1874. I fully recognize the principle that where a "later act covers the whole subject of earlier acts, embraces new provisions, and *plainly shows that it was intended* not only as a substitute for the earlier acts but to cover the whole subject then considered by the legislature, and to prescribe the only rules in respect thereto, it operates as a repeal of all former statutes relating to such subject matter" (59 Corpus Juris 919), "and was intended as a substitute for it." 59 Corpus Juris 921, note 41. (Italics supplied.) This principle is fully recognized by this Court. Levy, Aronson & White v. Jones, 208 Ala. 104, 93 So. 733.

The question now is whether the act of 1915 plainly shows that it was intended to cover the whole subject. It certainly would have been clearer that it intended to cover the features of the act of 1874 if it had expressly repealed that act as it did that of 1872, or even if there had been a general repealing clause.

As we have said the act of 1874 was not in the form of an amendment to that of 1872, did not re-enact it as amended, but was original and stood effectively regardless of what may become of the act of 1872. I think that it is not unreasonable to hold that it was an exception from the operation of that act regardless of such changes and amendments as may be made to it. And when Congress in 1915 amended and re-enacted it, it is not beyond the pale of legislative interpretation to say that the act of 1874 continued as an exception to it as thus amended, since nothing is indicated one way or the other in the act of 1915. In that connection, the following statement in 59 Corpus Juris 927 seems to be well supported: "Insofar as a later law is merely a reenactment of an earlier one, it will not repeal an intermediate act which qualifies or limits the first one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as did the first. The rule is subject to the exception that where the reenacting act and the intermediate act are wholly inconsistent with

each other and cannot stand together, the intermediate act will be regarded as repealed." This principle seems fully here to justify an interpretation of this situation so that the act of 1874 continues to modify the act of 1872, as re-enacted. But assuming that this is not the result, I think that situation at least created an ambiguous legislative status which continued without judicial or legislative interpretation or change until the adoption of the Code of 1926.

When that Code was adopted with the act of 1874, as section 544, Title 46, and the act of 1915, as section 601, in the same title, it cleared the assumed ambiguous situation as to whether the act of 1874 had been repealed, when Congress declared that those sections of the Code and all others in it were presumed prima facie to be the law; though not necessarily so. I do not think Congress would have put into the Code as adopted a section embracing a statute which had been intended to be repealed. I concede that the adoption of the Code did not enact section 544, supra, as a law not theretofore in effect. But I do contend that its adoption is a legislative interpretation of the act of 1915, as not repealing the act of 1874. There may have been an ambiguous status prior to that time, but not afterwards. When it says that section 544 is prima facie the law, notwithstanding section 601, it means that they must both be so regarded unless they are wholly inconsistent. They can both have a field of operation, and when both are thus inserted, I think that is what Congress is saying to us. And in doing so, they are virtually adopting and applying the principle of law quoted above from 59 Corpus Juris 927.

I cannot agree with the majority opinion.