38 So.2d 291

**McCOLLUM v. STATE.**

6 Div. 729.

Court of Appeals of Alabama.
Jan. 11, 1949.

Jack H. McGuire and Jas. W. Strudwick, both of Tuscaloosa, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for and convicted of the offense of assault with intent to ravish.

Actually there is no material conflict between the evidence presented by the State and that presented by the defense.

The evidence presented by the State was directed toward showing that the appellant, who is 25 years of age, lived about a half mile from the home of Mr. and Mrs. Mack Freeman in Tuscaloosa County. Appellant was known to the Freemans and testified they had always been good to his family.

On June 11, 1948 the appellant went to the Freeman home and borrowed a saw.

The next day the appellant returned to the Freeman place. Mrs. Freeman was returning from a spring with two buckets of water. When Mrs. Freeman was within a distance of about a city block from the house she saw appellant coming out of the back gate, we infer of the yard fence. Appellant proceeded toward Mrs. Freeman, and as to what occurred upon their meeting we now quote from the record:

"Q. As he walked up to you, did he say anything? A. He didn't say anything only 'Good morning' and I set my water down and I spoke and said 'Good morning.'

"Q. All right, what was the next thing he said. A. I says, 'Zear, it is hot weather this morning, isn't it?' and he said 'Yes, and you are carrying two big buckets of water.'

"Q. All right, what was the next thing that happened? A. He stood there a few minutes and says 'I didn't come to borrow the saw this morning.'

"Q. Did you make any reply to that? A. No sir, I didn't.

"Q. Well, what was the next thing he said?

A. He says 'I came after something else.'

"Q. All right. A. And I says, 'Well, what did you come for?'

"Q. What did he say to that? A. He says 'You know what I come for.'

"Q. Did you reply to that? A. No, I didn't * * * yes, I said 'I don't understand it;' I says 'Zear, I don't know what you mean.'

"Q. And what did he say to that? A. Well, he began to walk then to me, and says 'Yes, you do know what I mean.'

"Q. Did he ever actually say to you, Mrs. Freeman, what he came for? A. No, sir, he just says 'I came after something else this morning.' I says 'Zear, I don't understand what you mean' and he began to walk to me.

"Q. How close was he to you at that time? A. He stopped right up in my face. When I first come from the spring, I was about six or seven feet from him.

"Q. You were about six or seven feet from him when he started walking on up toward you and told you that you did know what he came for, and how close did he get to you? A. He came about three steps.

"Q. What happened then? A. I throwed up hands and I says 'You darn black negro, who do you think I am?' I says 'I'm going to call Mack, he is right up here plowing,' and he broke and run.

"Q. He what? A. He broke and run when I told him I was going to call Mack.

"Q. Which direction did he go? A. He went down to the back of the house. There is a branch back down there and he went that way."

Other evidence presented by the State further tended to show that there were no other adults at the Freeman home at this time, though two of the Freeman children, the oldest a boy of 8 years, were in the house.

It was further shown that appellant was not apprehended for several days and when arrested attempted an escape.

The appellant testified in his own behalf. In answer to one question he stated: "I don't remember saying nothing but just asking her did she know what I came after."

Otherwise the appellant's testimony is negative as he claimed he could remember nothing more of the occurence, nor did he know why he went to the Freeman place on the day in question.

In the phraseology of the indictment returned in this case this appellant is charged with assaulting Mrs. Freeman "with the intent to forcibly ravish her."

 Under such charge, as stated by Presiding Judge Bricken of this court, in

McCarter v. State, 32 Ala.App. 352, 26 So. 2d 211, 212:

"The burden of proof was upon the State, to show by the evidence, under the required rule, to justify a conviction of an assault with intent to commit rape, that from the acts and conduct of the accused his intention was to gratify his lustful desire against the consent of the female notwithstanding resistance upon her part. And the rule is, if the evidence raises a mere suspicion, or, admitting all it tends to prove, defendant's guilt is left in uncertainty, or defendant [dependent] upon conjecture or probabilities the court should instruct the jury to acquit. In other words, the evidence should be of such character as to overcome, prima facie, the presumption of innocence which attends the accused.

"In Pumphrey v. State, 156 Ala. 103, 106, 47 So. 156, 157, the Supreme Court said:

" 'The principle invoked by the defendant is that force is an essential element of rape, and that, on a charge of assault with intent to commit rape, the evidence, to be sufficient to justify the conviction, should show such acts and conduct on the part of the accused as would leave no reasonable doubt of his intention to gratify his lustful desire against the consent of the female and notwithstanding resistance on her part. This principle is well supported by our own decisions, and we accept it as the law.'

"What has been said hereinabove is in accord with a large number of decisions of the Supreme Court of Alabama, in all of which the evidence cited by that court was much stronger, and the circumstances more aggravating than in the instant case. Jones v. State, 90 Ala. 628, 8 So. 383, 24 Am.St. Rep. 850; Toulet v. State, 100 Ala. 72, 14 So. 403."

In Kelly v. State, 1 Ala.App. 133, 56 So. 15, the defendant, 18 to 21 years of age, was convicted of assault with intent to rape. His victim was a girl 13 years of age. He had first passed the victim in his wagon as she was walking in a road leading to her home and asked her if she wanted to ride. Upon her declining he told her

he could make her ride if he wanted to. The victim then turned back down the road and turned off on a wooded path. Some distance from the road the defendant appeared and as the victim ran he chased after her calling to her that it was too late now to run. This chase led the pair to the presence of a hunter whereupon the defendant gave up the chase. Defendant's conviction upon the charge of assault with intent to rape was sustained.

In Burton v. State, 8 Ala.App. 295, 62 So. 394, 395, the defendant was indicted for assault with intent to rape, but found guilty of an attempt to assault with intent to rape. In the Burton case, supra, the facts show that the defendant while driving in a buggy along a country road met his victim, a girl 15 years of age. He told her to get in the buggy, and upon her refusal told her "By ———, I will show you". Whereupon the victim ran as rapidly as she could down the road toward the nearest house, screaming as she ran, and being followed by the defendant. Her screams were heard by the occupant of the house who did not find out the trouble until the victim reached him, and who never saw the defendant. In sustaining the conviction in this case of an attempt to commit an assault with intent to rape, the late Judge Perry Thomas, wrote:

"Under the authorities in this state the evidence was sufficient to warrant the court in submitting to the jury the question as to whether or not there was on the part of defendant an intent to rape. If they so believed, then as to whether they should convict him of 'an assault with intent to rape,' or of 'an attempt to commit an assault with intent to rape,' which, as before pointed out, means an attempt to rape which has not proceeded far enough to amount to an assault, would depend, it seems under the decisions in this state, on the fact as to whether or not the defendant ever got near enough to his intended victim to have been able to lay his hands upon her."

The sufficient nearness of the accused to lay hands on the victim above referred to by Judge Thomas is of importance in determining whether the apparent present ability to commit the battery, an element essential to every assault, is present. It is determinative of whether the actions of the accused have gone beyond an attempt. However, an aggravated assault with a specific intent, such as we are now considering, must be established by substantial evidence from which the jury can reasonably infer more than the actual overt act plus the apparent present ability to carry out battery or offense threatened. Specifically, to sustain a conviction of assault with intent to rape, the State must "show by evidence, sufficient to meet the required rule, that the accused intended to gratify his lustful desire against the consent of the female notwithstanding resistance upon her part." This evidence is not sufficient proof of guilt if the facts merely are consistent with guilt. They must be inconsistent with innocence. We are not, under the law, permitted to infer the worst intent the facts will permit of. Under the basic rule of our common law of presumption of innocence the reverse is true.

No hard and fast rule for determining the sufficiency of the evidence in the type of case we are now considering is possible. Certain minimums, which we have mentioned above, are however clearly deducible from our decisions, and are essential.

On analysis the evidence produced by the State in this case does not, in our opinion, meet the standards required to sustain this conviction.

While we think that the words spoken by the appellant to Mrs. Freeman are such that a jury might reasonably infer that they were insulting in character, in that they may have constituted a solicitation, yet words in and of themselves can never amount to an assault. Taken by themselves, the appellant's statements are not in themselves indecent. Their impropriety must be inferred. Of course, in addition to the statements spoken by the accused is the fact that he, apparently during the course of the conversation, advanced to within two or three feet of Mrs. Freeman. Yet, upon the very first show of resistance on the part of Mrs. Freeman the appellant fled. In the Kelly and Bur-

ton cases, supra, the words spoken were meaningful only by inference. But in these cases in addition to the insinuating statements there was also a flight by the victim and a more or less violent pursuit by the accused. Such actions gave strength to inferences in those cases not permitted under the facts of this case. We do not of course mean to say that flight and pursuit are essential in every case to establish the offense of assault with intent to rape, but certainly where such element is present considerable certainty is added to overt acts otherwise speculative in character. In the present case the appellant, according to Mrs. Freeman, did not touch her, nor did he ever attempt to.

Mrs. Freeman was at the time of the trial below 33 years old and weighed 145 pounds. In the Kelly and Burton cases, supra, the victims were 13 and 15 years of age, respectively. The record shows that this appellant was crippled from birth, and also from burns previously received, though not to an extent that prevented his doing farm work, or from running. The age and size of the accused and victim, in the totality of the facts to be considered, must be accorded some significance.

This entire court has en banc given careful consideration to the questions raised by facts presented in this record. We pretermit the question of the propriety of the refusal of the general affirmative charge requested by the appellant since we have concluded that the verdict in this is not supported to the required degree by the weight and preponderance of the evidence.

Resort must be had to speculation to read criminal meaning into the overt acts attributed to the appellant, and in view of appellant's flight at the first show of resistance resort must also be had to speculation in determining that his intent was to ravish Mrs. Freeman notwithstanding resistance on her part. Therefore appellant's motion for a new trial should have been granted on such basis, set out fully as one of the grounds for said motion. Denial of such motion in our opinion necessitates a reversal of this case.

Reversed and remanded.