**Luther BAILEY, Appellant,**

v.

**Lee HENSLEE, Superintendent of Arkansas State Penitentiary, Appellee.**

**No. 16142.**

United States Court of Appeals
Eighth Circuit.

April 3, 1959.

Rehearing Denied April 27, 1959.

Thad D. Williams, Little Rock, Ark., for appellant.

Thorp Thomas, Asst. Atty. Gen. of Arkansas (Bruce Bennett, Atty. Gen. of Arkansas, on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from an order denying appellant's petition for writ of habeas corpus. Appellant, a negro, was charged in the Circuit Court of Pulaski County, Arkansas, with the crime of rape upon a white woman. On the trial before a jury he was convicted and upon a verdict of guilty the court imposed a death sentence as required by the statutes of Arkansas. When the case was called for trial defendant interposed a motion to quash the petit jury panel on the ground that in the selection of the panel negroes had been systematically excluded. On this motion he submitted the testimony of the deputy clerk of the court, who, based on the records of the clerk's office, testified in substance as follows: That his record shows that two negroes were selected by the jury commissioners for the March 1952 term, out of a total of 24. It is the general procedure of this court to select 24 jurors on the regular panel and 12 alternates. These two negroes actually served. There was one negro on the jury panel for the September 1952 term. There were two negroes selected for the March 1953 term. Five negroes served during the September 1953 term; three were on the extra panel and two on the regular panel. For the special panel five jurors were selected out of 21. There is nothing to indicate on the record whether they were white or colored. There were two negroes on the March 1954 term. There were 24 persons on the special panel; only five were selected. The record does not indicate whether the remainder were colored or white. Two negroes were selected on the panel for the September 1954 term. There was a special panel for that term of 100 names; seven persons were selected; they were all white. He did not know whether the remaining people on the list were colored or white. Three negroes served on the March 1955 regular panel. One person was used from the special panel of 100 names. Four negroes were included in the 100. Only one person out of 100 was used on the September 1955 special panel. There were three negroes on the

regular panel. Three negroes were selected on the regular panel for the March 1956 term. The first special panel selected has 150 names on it; it does not indicate colored and white. The first 100 on this list were ordered to report this morning; 27 of them are here; none are negroes. "Record of Poll Tax receipts issued in Pulaski County for the years 1954 and 1955. Total number colored (1954) 10,180 14.8% (1955) 8,557 13.-3%. Total number white (1954) 58,-484 85.2% (1955) 55,980 86.7%." Following this testimony counsel for appellant requested the court to allow the jury commissioners for all the terms from the 1952 March term until the 1956 March term, inclusive, to testify as to the matters and allegations set out in his motion to quash the regular panel and the special panel of petit jurors. To this request the court responded:

"The court is going to overrule that motion. The record will reflect what they did."

Appellant had requested subpoenaes for certain witnesses which were duly issued and served but he had not prior to the opening of his trial secured subpoenaes for the jury commissioners. At the hearing on motion to quash the panel appellant made no offer to prove to what the jury commissioners would, if called, testify. Following his conviction and sentence he moved for a new trial on various grounds, but did not allege as error the refusal of his request that the jury commissioners be subpoenaed. His motion for new trial being denied, he appealed to the Supreme Court of Arkansas alleging 31 errors but did not allege as error the refusal of the court to order subpoenaes issued for the jury commissioners as witnesses, but did allege error in the overruling of his motion to quash the panel on the ground that in the selection of the petit jury panel negroes had been systematically excluded and also alleged that the evidence was insufficient to prove the guilt of the defendant beyond a reasonable doubt. On the hearing in the instant proceeding for writ of habeas corpus the records of defendant's

trial in the state court and on his appeal to the Supreme Court of Arkansas and his application for writ of certiorari to the Supreme Court of the United States were by stipulation made a part of appellant's showing.

It appears from the record that shortly after midnight on June 14, 1956 appellant entered the home of the prosecuting witness through a window, ravished the occupant, stole $190 from her purse, and seriously beat and bruised her. In doing so he lost his billfold in her room, and the prosecuting witness' purse was found in appellant's automobile. The evidence of guilt is without substantial dispute. Responding to appellant's assignment that negroes had systematically been excluded from the jury panel, the Supreme Court of Arkansas, Bailey v. State, 227 Ark. 889, 302 S.W.2d 796, 799, said:

"We think the court did not err in refusing to allow the jury commissioners to testify. They had not been subpoenaed to appear as witnesses and were not present. Furthermore, after the court had denied his request that they be permitted to testify, appellant failed to show what the jury commissioners would have said had they testified. See Turner v. State, 224 Ark. 505, 275 S.W.2d 24.

"Appellant next argues that the above testimony of Louis Rosteck alone was sufficient to show racial discrimination. We do not agree. We think Rosteck's testimony,— which speaks for itself,—does not show an intentional and systematic limitation of Negroes on the jury list."

After the Supreme Court of the United States had denied certiorari, appellant proceeded for relief under a so-called post conviction statute, which reads as follows:

Act 419 of 1957. "Section 1. Any person convicted of a felony and incarcerated under sentence of death or imprisonment who claims that the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of this State, or that the court was without jurisdiction to impose the sentence, or that the sentence exceeds the maximum authorized by law, or that the sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under a writ of habeas corpus, writ of coram nobis, or other common law or statutory remedy, may institute a proceeding under this Act to set aside or correct the sentence, provided the alleged error has not been previously and finally litigated or waived in the proceedings resulting in the conviction or in any other proceeding that the petitioner has taken to secure relief from his conviction. * * *"

In this proceeding he charged that he had been denied rights guaranteed him by the Constitution of the United States in that he had been denied compulsory process. The trial court denied any relief and in doing so, among other things said:

"The only question to be determined by this Court is: Was the fact that Bailey was denied compulsory process for the jury commissioners from 1952 to 1956 inclusive, finally passed on or waived in the proceedings resulting in the conviction?

"A careful examination of the original record in this case fails to show that the question now attempted to be raised was even mentioned therein, either in the Bill of Exceptions or motion for a new trial. Certainly, even under the broad provisions of Act 419, the record cannot now be amended to include something that was left out of the Bill of Exceptions originally."

On appeal from the court's order denying relief the Supreme Court of Arkansas affirmed the decision of the trial court. Bailey v. State, 313 S.W.2d 388,

390. In the course of its opinion affirming the trial court it is said, inter alia:

"The defendant was represented by able counsel who had every opportunity to make his record on the point and bring it up on appeal. If he did so, the alleged error was finally litigated. If this was not done, then the alleged error was waived."

From this decision appellant applied to the Supreme Court of the United States for a writ of certiorari which was denied,

"* * * without prejudice to an application for a writ of habeas corpus in an appropriate United States District Court."

Bailey v. State, 358 U.S. 869, 79 S.Ct. 101, 3 L.Ed.2d 101. Following the denial of his petition for writ of certiorari appellant instituted by petition for writ of habeas corpus the proceeding resulting in the order denying his petition from which this appeal is prosecuted. In his petition he seeks relief on the ground:

"I. That the Conviction under which the plaintiff is held and was sentenced is void in that he was denied compulsory process for obtaining witnesses in his favor in violation of the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States.

"II. That the petitioner has exhausted all other remedies before filing this petition."

On hearing of his petition he did not ask for compulsory process to secure the attendance as witnesses of the jury commissioners nor did he offer to prove what the commissioners' testimony would be if they had been examined as witnesses in his behalf, but as herein observed the petition was presented on the records of the trial and hearing in the state courts.

On this appeal appellant urges (1) appellant was denied due process as guaranteed by the Fourteenth Amendment to the United States Constitution, (2) appellant has not waived his Constitutional rights, and (3) appellant has exhausted his state remedies.

There is no evidence in the record that the jury commissioners excluded negroes from the petit jury panel, neither is there anything to indicate that the jury commissioners would have testified to anything different from the testimony of the deputy clerk. Neither in the proceedings in the state court nor in the proceedings in the United States District Court was there any offer of testimony as to what the commissioners would testify. There seems to have been a record in the clerk's office which formed the basis of the deputy clerk's testimony. The Supreme Court of Arkansas held that this was insufficient to show a systematic exclusion of negroes from the jury panel and in the absence of any proof or offer of proof as to what the jury commissioners would testify the ruling of the court in declining to have them subpoenaed, if error, would seem to be clearly without prejudice. The ruling of the court was a matter of record and, if error, appellant's remedy was by appeal to the Supreme Court based upon such alleged error. We have consistently held that an application for habeas corpus cannot serve as an appeal. Carruthers v. Reed, 8 Cir., 102 F.2d 933, 939, certiorari denied 307 U.S. 643, 59 S.Ct. 1047, 83 L.Ed. 1523; In re Edwards, 8 Cir., 106 F.2d 537; Buie v. King, 8 Cir., 137 F.2d 495; McCoy v. Pescor, 8 Cir., 145 F.2d 260; Berkoff v. Humphrey, 8 Cir., 159 F.2d 5. Not having urged this alleged error on appeal the error, if any, was waived. Carruthers v. Reed, supra; Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268. In Brown v. Allen, supra, in a concurring opinion by Mr. Justice Frankfurter it is said [73 S.Ct. 444]:

"Of course, nothing we have said suggests that the federal habeas corpus jurisdiction can displace a State's procedural rule requiring that certain errors be raised on ap-

peal. Normally rights under the Federal Constitution may be waived at the trial, Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, and may likewise be waived by failure to assert such errors on appeal. Compare Frank v. Mangum, 237 U.S. 309, 343, 35 S.Ct. 582, 593, 59 L.Ed. 969. When a State insists that a defendant be held to his choice of trial strategy and not be allowed to try a different tack on State habeas corpus, he may be deemed to have waived his claim and thus have no right to assert on federal habeas corpus. Such considerations of orderly appellate procedure give rise to the conventional statement that habeas corpus should not do service for an appeal. See Adams v. United States ex rel. McCann, supra, 317 U.S. at page 274, 63 S.Ct. at page 239. Compare Sunal v. Large, 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, with Johnson v. Zerbst, 304 U.S. 458, 465–469, 58 S.Ct. 1019, 1023–1025, 82 L.Ed. 1461."

■ After having made his record in the trial court appellant deliberately omitted urging the question which he now seeks to urge, either in his motion for new trial or on appeal. This we think was a waiver and constituted a failure to exhaust his state remedies. It is worthy of note that in the post-conviction proceeding brought by appellant he did not call the jury commissioners to testify, nor did he ask for compulsory process to secure the attendance of these witnesses; neither did he offer to prove what testimony these jury commissioners would have given had they been called as witnesses, nor indeed did he offer any testimony that negroes had systematically been excluded from the petit jury panel. In this connection it is to be noted that the Supreme Court of Arkansas on the second appeal held that appellant had waived his right to claim error on the question he now urges. So likewise in the instant proceeding the United States District Court held there was a waiver. Concerning the question of waiver the trial court said:

"While the rule just stated may not be applicable to one of those extraordinary cases in which a substantial claim goes to the very foundation of a proceeding, as in Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, this is not such a case. Here there is no indication that anyone concerned was trying to prevent the defendant from having a fair trial, or that he was denied a fair trial; he was represented by appointed counsel from the time of his arraignment, more than a month before the trial date, and he was afforded process for certain witnesses, the denial of process for the jury commissioners being evidently purely collateral and incidental to the circuit court's determination that the motion to quash should be decided solely upon the basis of the records in the office of the circuit clerk bearing upon the selection of jurors. In its rulings on questions of evidence during the course of the trial proper, and in its instructions to the jury the circuit court appears to have been careful to protect all of the legitimate rights of the petitioner; and the verdict and judgment were supported by the evidence."

■ We have examined the entire record with great care and are convinced that the guilt of the defendant was proved by the evidence beyond a reasonable doubt, and if the ruling denying him compulsory process for the production of the jury commissioners as witnesses was a technical denial of a Constitutional right, there is no proof that he was injured thereby, and he has clearly waived this Constitutional right. In Carruthers v. Reed [8 Cir., 102 F.2d 939], supra, in holding that appellants had waived their Constitutional rights, we said:

"Petitioners waived their right to review the judgment of the state court in the regular manner, and ha-

beas corpus in the circumstances cannot be substituted for such review."

We are convinced that he had a fair trial. The order appealed from is therefore affirmed.