190 So.2d 293

**Walter PHILPOT, Jr.**

v.

**STATE.**

5 Div. 651.

Court of Appeals of Alabama.

Aug. 16, 1966.

Richmond M. Flowers, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

Walker & Hill, Opelika, for appellant.

**330**

PER CURIAM.

In conference this court divided over (a) the admissibility of a confession given by the defendant while in custody in a back room at the station, and (b) the trial court's refusal of a continuance because the Alabama statutes exclude all women from serving as jurors.

We certified to the Supreme Court of Alabama the questions and were given the answers which appear in the statement of the case along with the pertinent facts of the case.

■ The confession here received was not within the influence of Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977, so as to require a reversal on this appellate review. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882.

Additional claims of error which the appellant covers in his brief are:

.1) That the acts and conduct should be such as to leave no reasonable doubt as to accused's intent—(a) to gratify his lust, and (b) this in spite of the female's utmost resistance, citing, among others, Jones v. State, 90 Ala. 628, 8 So. 383;

2) That (a) under the presumption of innocence "the worst intent * * * may not be inferred"—the reverse is true, citing McCollum v. State, 34 Ala.App. 207, 38 So.2d 291, 295; (b) If the evidence only shows that accused intended consensual carnal knowledge, the State has not made a case, citing Taylor v. State, 20 Ala.App. 161, 101 So. 160;

3) That the charge of assault with intent to rape presupposes consummation but for (a) resistance, or (b) intervention of an outside force, citing Curry v. State, 23 Ala.App. 140, 122 So. 303;

4) That if "the defendant desisted before consummation without any outside interference and with no unusual resistance on the part of the female" a conviction of assault with intent to rape will not be upheld, citing Curry, supra.

5) That a mere scintilla (or a mere suspicion) is not enough to support a verdict of guilt in a criminal case, citing Ex parte Grimmett, 228 Ala. 1, 152 So. 263;

6) That the trial judge erred in refusing the following tendered written charges:

(a) "Charge #8. The Court charges the jury that if, from the evidence in this case, you are not satisfied beyond a reasonable doubt that the defendant had any intention forcibly to ravish * * * at the time he put his hands upon her or touched her, if you are satisfied that he did put his hands upon her or touched her, but that he was simply trying to persuade her to have sexual intercourse with him, and if from the evidence you are satisfied the defendant did nothing more, you cannot convict him of an assault with intent to ravish."—citing Brooks v. State, 185 Ala. 1, 64 So. 295 (Charge C).

(b) "Charge #7. The Court charges the jury that an indictment for assault with intent to ravish also embraces the charge of assault."

(c) "Charge #9. The Court charges the jury that if from the evidence in this case you are not satisfied beyond a reasonable doubt that the defendant had any intention forcibly to ravish * * * at the time she got in the automobile where the defendant was hiding, if you are satisfied from the evidence that he was hiding in the automobile at said time and place, but that the defendant was simply trying to persuade her to take him to another place where he might have sexual intercourse with her, and if from the evidence you are satisfied the defendant did nothing more, you cannot convict the defendant of an assault with intent to ravish.";

7) That on finishing his oral charge the court erred in mentioning before the jury that the defendant had not taken the stand; and

8) That the trial court abused its discretion "by imposing on [Philpot] the greatest penalty permitted by the statute, in view of the fact that [the girl] was not abused sexually."

In Jones v. State, 90 Ala. 628, 8 So. 383, the ratio decidendi is encapsulated thus:

"* * * It appears that the defendant put his hands lightly on the woman's shoulders, followed her silently about sixty feet, making no threats, or effort to stop her, or attempting any coercion, or doing anything calculated to put her in terror; and when she screamed and ran off, he ran in the opposite direction without attempting to detain her. These acts and conduct do not reasonably authorize the conclusion that defendant intended to accomplish his purpose against her will, and by force, if necessary. They are consistent with the theory that he expected to gratify his lustful desires with her consent. If the evidence be believed, it will be conceded that the conduct of the defendant was indecent and insulting, and subjected him to a conviction for an assault and battery; but it falls short of showing a felonious intent. * * *"

In Pumphrey v. State, 156 Ala. 103, 47 So. 156, the court, per Denson, J., conceded the legal force of the rule in *Jones* that the acts and conduct must leave no reasonable doubt of intent to act against the woman's consent and in spite of her resistance. However, the setting of *Pumphrey* reflects use of more violence than in *Jones* i. e., the defendant got upon the woman's person while she was asleep in bed.

This attention to proof of violence appears in the report of Dudley v. State, 121 Ala. 4, 25 So. 742. Therein the court, after distinguishing *Jones,* supra, remarked:

"* * * We know of no rule of law by which, when violence is used on the person of the prosecutrix by defendant, and an inference of his guilty intent as specifically charged may be inferred from his acts and conduct, the case may

be taken from the jury in the giving the general charge in his favor, * * *"

*McCollum,* supra, was a case of a cripple speaking to a robust female. Perhaps the words he used could have been laid in a common law indictment by means of an innuendo so as to connote an indecent meaning. But words alone without some attempt to touch were held insufficient to make out assault with intent to ravish.

Philpot pushed the prosecutrix down, grabbed her throat and asked (or demanded as the jury might infer legitimately) that she take him to a remote State Park. This was at about eleven P.M. When these acts of physical force are viewed in the light of the words used and the state of the defendant's fly, they are sufficient, if credited beyond a reasonable doubt, to sustain the verdict.

*Curry,* supra (reversed for admitting prejudicial matter), not only contains the proposition cited above, but also says in supporting the sufficiency of the evidence:

"* * * Where there is physical force on the part of the man, in an attack on a woman, coupled with evidence tending to prove an intent to force an intercourse, and a physical resistance on the part of the woman or an outside interference, the whole question is one of fact for the jury. From these facts, the jury may conclude that the defendant is guilty of assault to rape, assault and battery, or that the defendant is not guilty of any charge."

As to outside interference, there is some evidence that the approach of cinema patrons on the street may have caused Philpot to desist holding the prosecutrix.

Ex parte Grimmett, supra, is familiar law. We know of no precise measuring device to determine what is a mere scintilla as distinguished from proof beyond a reasonable doubt and to a moral certainty. However, here we perceive more light than from a mere "spark."

If, to borrow from Judge Harwood, the judicial distinction is a visceral reaction, then we must confess that, like Napoleon's army, the law, perforce, travels on its belly.

■ Charge 7, under the evidence, was abstract because the evidence was undisputed that the defendant committed a touching of the prosecutrix. It was within the province of the jury to determine whether or not this was done in "rudeness or in anger."

■■ The law cannot, in battery, draw a line between degrees of violence. iii Bl.Comm. 120. Murdock v. State, 65 Ala. 520. Violence in law is kin to the "vi et armis" formerly required to plead a trespass. See 37 Hen. VIII c. 8 § 1. Taylor v. State, 25 Tenn. (6 Humphreys) 285.

The oral charge fairly covered the tendencies of the evidence which put the defendant in the most favorable light ex hypothesi.

Charges 8 and 9 were adequately covered by the oral charge.

■■ We have no revisory powers as to the severity of the sentence, so long as the term thereof is within statutory limits. See Code 1940, T. 14, § 38 (two years minimum, twenty years maximum imprisonment). Our statute enables us to review *judgments* only. Code 1940, T. 15, § 367 (appeal), § 383 (writ of error).

■ The defendant did not testify. The trial judge's oral charge originally stated inter alia:

"* * * you are to determine whether or not the defendant was telling the truth when he testified on the stand."

On having this lapsus linguae called to his attention, the court then pointed out that the defendant had not taken the stand and withdrew his prior statement. Under Code 1940, T. 15, § 305, this was not error. Pierson v. State, 39 Ala.App. 346, 100 So. 2d 47.

Unlike the California trial judge's charge in Griffin v. California, 380 U.S. 609, 610, 85 S.Ct. 1229, 14 L.Ed.2d 106, the court's charge here wholly omitted *after correction* any instruction that the jury might make any inference from Philpot's election not to be a witness.

■ Even if we were to be wrong in this view, yet since Philpot's trial began before April 28, 1965 (the date of Griffin's delivery), the Fourteenth Amendment rule there abrogated is not retrospective. Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453.

The original opinion of the writer, Appendix hereto, sets out the facts which we adopt for this opinion.

The judgment of the circuit court is due to be

Affirmed.

PRICE, Presiding Judge (concurring in result).

Regardless of any personal views on the subject of women serving on juries, it is my firm conviction the legal status is settled by the response of the Supreme Court to the certified question from this court. The opinion of the Supreme Court on any question so certified is conclusive, controlling and binding on this court. Section 88, Title 13, Code of Alabama, 1940; Mars v. State, 23 Ala.App. 569, 129 So. 314; Lashley v. State, 28 Ala.App. 86, 180 So. 720; State ex rel. Mantell v. Baumhauer et al., 31 Ala.App. 27, 12 So.2d 332.

CATES, Judge (concurring in part).

Along with the questions certified to the Supreme Court was an appended opinion by Cates, J., in which neither of the other judges of the Court of Appeals concurred.

The following is an abridgement of that earlier opinion. The separate opinion of partial concurrence filed by Cates, J., refers thereto.

In State v. Madison, 240 Md. 265, 213 A.2d 880, Madison, unlike Schowgurow, belonged to a faith believing in a Supreme Being.

The State argued therefore that he had no standing to complain of being indicted and tried by juries of believers.

After reviewing Walter [Walter v. State, 208 Ind. 231, 195 N.E. 268, 98 A.L.R. 607], supra, Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181, and Allen v. State, 110 Ga.App. 56, 137 S.E.2d 711, the Maryland Court of Appeals concluded:

"Equal protection of the laws, as well as due process, is involved. Under the state's contention, while Schowgurow, a Buddhist, was held entitled to a new trial because he was indicted and tried by juries unconstitutionally selected, Madison, a member of the Apostolic faith, could not object to his indictment by a grand jury selected in the same unconstitutional manner. The only difference between the two men, in this respect, is the nature of their religious beliefs. Discrimination because of opinions about religion is one of the classic examples of denial of the equal protection of the laws. Niemotko v. State of Maryland, 340 U.S. 268, 272-273, 71 S.Ct. 325, 95 L.Ed. 267 (1951); Juarez v. State, 102 Tex.Cr.R. 297, 303-304, 277 S.W. 1091 (1925). If we were to uphold the State's contention in this case, the effect would be that pending indictments against persons who believed in a Supreme Being could not be successfully challenged, while indictments against others who do not have that belief would be dismissed. There would, in effect, be an unconstitutional discrimination in favor of nonbelievers as against believers.

"The State points to the fact that a decision in its favor in this case would materially reduce the number of indictments which must be rebrought. We

made it clear in Schowgurow that the decision in that case, for the reasons of public policy in the administration of justice therein stated, with the exception noted, is to apply only prospectively. Nevertheless, we recognize that there will be some interference, for the time being, with the expeditious disposition of pending criminal cases. This additional, if temporary, burden upon our courts and the State results because, under the decision of the Supreme Court in Torcaso, the fundamental principles of due process and the equal protection of the laws require that all accused persons in pending criminal cases shall have the right to ask that they be indicted and tried by juries selected in the manner which the Supreme Court's decision has made necessary. We pay a price for the federal nature of our government, but, without it, we would not be a nation. Under our governmental system, the decisions of the Supreme Court must be controlling even when, as here, the decision makes invalid a long-established provision of the Maryland Constitution, previously held valid by this Court."

I consider Philpot, though a male, had standing to complain of the absence of women on the array brought to him and to the jury rolls of Lee County.

I am not in accord with the rationale of headnote 11, page 409, in White v. Crook, supra, that Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, and Tehan v. United States, ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L. Ed.2d 453, are apt as dictating "prospective overruling."

*First*, I fail to see that there is any overruling of any prior court decision expressly or in fair terms approving confining jury selection by the statute or its predecessors to "male persons." All that can be shown either in Alabama or United States Supreme Court decisions is dicta such as that used illustratively in Strauder v. West Virginia, infra.

*Second*, prospective overruling when employed in criminal law is seldom found where a self-executing constitutional right is breached. E. g., Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington State Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799.

See State v. Johnson, 43 N.J. 572, 206 A.2d 737, In re Lopez, 62 Cal.2d 368, 42 Cal.Rptr. 188, 398 P.2d 380, wherein it is pointed out the *Mapp* [Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] and *Escobedo* cases are both evidentiary rulings using the rule of exclusion to restrain the prosecution.

Certainly, Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118, in 1961 was the revelation of what White v. Crook, supra, now expressly declares in 1966.

Nor do I find any difficulty in considering White v. Crook as binding authority. The Federal statute, 28 U.S.C. § 1253, shows that review by the United States Supreme Court is available to the unsuccessful party.

Here, the Attorney General, the State's constitutional law officer, saw fit to let White v. Crook become final. See State, ex rel. Carmichael v. Jones, 252 Ala. 479, 41 So.2d 280. It is a class action, res adjudicata, as to Lowndes County's officers.

**What Exemption can Constitutionally be Conferred on Women Jurors and not on Men?**

At the outset, I think it is crystal clear that broad exemptions for women, whether administrative or legislative, are extremely dubious as to equal protection and of complying with the Alabama Constitution, § 6, which, in trials of indictments, calls for an impartial jury of the county or district in which the offense was committed.

Of the system allowed to continue in Hoyt v. State of Florida, supra, the following comment is incisive and portentous of possibly another constitutional assault:

"However sound the foregoing conclusions may be theoretically, as a practical matter, automatic exemption equals automatic exclusion. If a state has a statute which requires that a woman volunteer if she wishes to serve on a jury, even if that statute does not purport to exclude women and even if it is fairly administered, the result will probably be that few, if any, women will serve on a jury in that state. Only a small fraction of those eligible ever volunteer."— Notes, Courts—Women Jurors—Automatic Exemption, 36 Tulane L.Rev. 858, 861 (1962).

The plumbline for the permissible latitude in *exemption* was set up by Mr. Justice Holmes. In Rawlins v. Georgia, 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899, we find:

" * * * The exclusion was not the result of race or class prejudice. * * "

The court saw a bona fide ground for the good of the community that their regular work should not be interrupted.

Under this test, an exemption for women who have school age children or invalid members of their household would seem reasonable. Beyond that, reasons give rise to exceptions and the possibility for discriminations.

Often we are posed with the eligibility of the mother who has a full retinue (if today there be such) of household servants. Her taking umbrage in a statutory exclusion might deprive the court of a trained intelligent mind.

Conversely, to draft her and other women so situated might load trials with silk stocking venires.

Accordingly, I think the circuit judges should be given the power to excuse women jurors in their sound judicial discretion.

This may not be feasible in all capital cases.

This arrangement could not cause the entire jury system of the State to be stricken down at one fell blow.

### Conclusion

Hence, as to the exclusion of women jurors, I consider

1) Code 1940, T. 30, § 20, and allied sections restricting juries to men only violate the Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States;

2) The appellant's motion to continue was proper procedure by a proper person within the protection of the Equal Protection Clause;

3) The appellant's retrial should be postponed until either:

(a) the jury rolls have been refilled with an appropriate number of qualified persons without regard to sex and a venire drawn therefrom is summoned to try Philpot's indictment; or

(b) he knowingly and intelligently withdraws his motion for continuance.

As a precedent, I would consider this to be retroactive only as to those who have objected before selection of a trial jury. Since no question of quashal of the indictment arose, I would forego any discussion thereof.

I rather suspect that today its only props are ancestor worship, male pride and female indifference.

After the Fourteenth Amendment came into being, a further defect showed up in the one-sidedness of the structure.

Because I think the motion to continue for want of venire-women was well taken, I vote to reverse the judgment below.

After our Supreme Court passed the women jurors question behind a veil of the rule of "standing" evolved in race exclusion cases, I thought for a time of withdrawing my original opinion. To find oneself in solitary disagreement, particularly in a relatively unblazed forest, is an experience which requires reappraisal.

Moreover, were sheer numbers decisive, the views of my two colleagues, the seven justices of the Supreme Court, also of Judges Rives, Johnson and Allgood, would require me to fold my tent and steal away.

Thomas Jefferson thought that each and every appellate judge should have to give a separate opinion. Warren, The Supreme Court in United States History, Vol. II, 113. This he conceived would be useful for the legislature to review the reasoning of the judges as well as the state of the law.

An intermediate appellate court whether ostensibly final or not can drift into becoming a mere ticket agent's validating stamp for a convict's journey from the county jail to the state prison. Much of our work sometimes seems to be given only cursory consideration by either superior or inferior courts. We seldom settle law except for the parties of instant concern. Waterman S. S. Corp. v. Brill, 243 Ala. 25, 9 So.2d 23. Indeed, one Attorney General of lamented memory is reputed to have ordered, de rigueur, the State's applying for certiorari on every reversal of a criminal conviction.

Yet we take the same oath as upper and nether judges. The temptation to tolerate a one-man opinion jurisprudence is an open invitation for corrupting thieves to enter the treasure house of the law.

I disclaim being afflicted by cacoethes dissentiendi. Rather, I believe I am required by my oath to express my views candidly. Conformity repressed contributes to intellectual sterility. Reasonable men and women should differ: from a rational dialogue others may reach better conclusions.

Here we have no settled rule of law. We have a statute enacted in an environment of an era in which women were consigned to the care of "Kinder, Kueche und Kirche."

With our Legislature currently seeking to find the application of White v. Crook, D. C., 251 F.Supp. 401, divergent views and not formal uniformity should be a desideratum in the public forum.

I cannot sit on my hands and let the quotation, infra, in the Supreme Court's response stand alone. In Blauvelt v. Holman, D.C., 237 F.Supp. 385, Johnson, J., reviewed by habeas corpus the detention of a State prisoner. Blauvelt v. State, 276 Ala. 671, 166 So.2d 399 (on coram nobis).

Hollis v. Ellis, D.C., 201 F.Supp. 616, there cited was a case where no state court appeal was taken. Bailey v. Henslee, 8 Cir., 264 F.2d 744, involved a Negro defendant who later had his conviction set aside. See 361 U.S. 945, 40 S.Ct. 408, 4 L. Ed.2d 364 and 287 F.2d 936.

Apter authority to deny the male defendant the right to demand female jurors might be gleaned from McKinney v. State, 3 Wyo. 719, 30 P. 293, 16 L.R.A. 710; State v. James, 96 N.J.L. 132, 114 A. 553, 16 A.L.R. 1141; State v. Mittle, 120 S.C. 526, 113 S.E. 335; Commonwealth v. Duca, 312 Pa. 101, 165 A. 825; Griffin v. State, 183 Ga. 775, 190 S.E. 2; State v. Sims, 213 N.C. 590, 197 S.E. 176; and State v. Jones, 5 Terry 372, 44 Del. 372, 57 A.2d 109.

These cases are but a barren echolaic adjuration to invoke the dictum in Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664, above mentioned. They fail to come to grips with the central paradox of conceding that women are human beings who may owe taxes but are to be denied a right to participate in government.

To confuse the exclusion of members of a race with the exclusion of one half the population (because female) verges on sophistry. The right to have women on juries is not based on any right of men to have men and women to have women to sit in judgment. The jury is not an elite corps, nor a corps of humanity's lowest common denominator.

Returning to Blauvelt v. Holman, supra, I think a reading of the entire opinion shows that the reason for rejection of Blauvelt's claim quoted in the Supreme Court's response was actually intended as but an illustration of the frivolity of Blauvelt's petition.

Thus, in addition to the extract used by our Supreme Court, the *Blauvelt* opinion contains the following:

"As to the contention that Blauvelt now presents which relates to the systematic exclusion of members of the Negro race from juries of Sumter County prior to and at the time of the proceedings which resulted in his present incarceration, the record, as now presented in this case, reflects that Blauvelt has not fairly and squarely presented this issue to the courts of the State of Alabama as he is required to do under § 2254, Title 28, United States Code. Furthermore, as to this issue, it affirmatively appears in this case that Blauvelt, a member of the Caucasian race, was fairly and adequately represented by counsel during the entire proceeding that resulted in his present incarceration. His counsel were competent and adequately and fairly represented him. The proceeding that resulted in his present incarceration included a plea of guilty to murder in the second degree, with the plea being entered by Blauvelt intelligently and with agreement by his counsel and his mother. This agreement further involved the additional provision that he would upon said plea of guilty receive a sentence of forty years. The jury followed to the letter the agreement as made by Blauvelt, his counsel, his mother and the prosecuting attorney. It follows, therefore, that this

petitioner was not deprived of any of his constitutional rights by reason of the proceeding which resulted in his present incarceration. In addition to the foregoing reasons, the record in this case reflects that Blauvelt, through his counsel, intelligently waived any objections that he may have had to the jury that was used in the proceeding resulting in his present incarceration. Floyd v. United States, 5 Cir., 260 F.2d 910; Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787. As a matter of fact, the record in this case affirmatively shows that the particular jury which heard his case was desired by the defendant and the defendant's counsel. In this connection, see Williams v. Georgia, 349 U.S. 375, 75 S.Ct. 814, 99 L.Ed. 1161, * * *"

As to White v. Crook, supra, I submit that Judges Rives, et al., seem in search for a modicum of palatable popularity of the Federal Judiciary, to have produced, with the postponed prospectivity, a conceptual monstrosity which tries to go simultaneously both North and South. Johnson v. New Jersey, supra, to me clearly indicates that White v. Crook was not an appropriate case for application of the doctrine of prospective adjudication. Either women should be on our juries now or the State Legislature uncoerced should lay down the timetable.

Though I believe women should now be on our juries, I do not think this should come from a Federal ukase hanging like the Sword of Damocles over our Legislature.

The mode of proceeding in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed. 2d 506, has no logic in the realm of jury selection. There are other judicial procedures of firm tradition to allay any supposed mischief.

As to the finality of the Alabama Supreme Court's view of the Federal constitutional problem here presented, I have heretofore taken a different view from my colleagues of Code 1940, T. 13, § 98, as applied to Federal questions. If I am wrong, I prefer to be consistent in my error. See Knox v. State, 42 Ala.App. 578, at 586, 172 So.2d 787, at 794.

Pragmatically, I realize this court is but a way station in the line of adjudication. My concern is that it should not narcotize itself so as to become a stagnant siding. See Ethridge, C. J., dissenting in State v. Hall, Miss., 187 So.2d 861, at 870.

Mr. Justice Foster, dissenting in Waterman S. S. Corp. v. Brill, 243 Ala. 25, at 29, 9 So.2d 23, at 28, said of Federal questions:

"This is a question of legislative interpretation by a court whose opinion is not conclusive and is only effective until the Supreme Court of the United States shall speak. It is our province to make the interpretation which we think will accord with that of the court which has final authority. As we undertake that task, there are only two considerations to guide us. One is *the trend of judicial opinion manifested* in that court of final jurisdiction, or two, in the absence of any clear direction from that source, to make the interpretation as we think is consistent with the rules and principles which are usually applied to legislative construction. * * *" (Italics added.)

This is the classic diagnostic dichotomy: shall the puisne judge prophesy or should he seek the revealed writing on tablets of stone?