192 So.2d 732

**John M. EARLY**

v.

**STATE.**

**Div. 115.**

Court of Appeals of Alabama.

Sept. 20, 1966.

Rehearing Denied Oct. 18, 1966.

John Coleman, Mobile, for appellant.

Richmond M. Flowers, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

CATES, Judge.

The appellant submitted this cause on oral argument April 5, 1966.

The Grand Jury of Mobile County indicted Early for possessing amphetamine sulfate without benefit of "a practitioner's" prescription, an offense contra formam statuti. Act No. 189, September 15, 1961, Sp.Sess., particularly § 3(3).

A petty jury, September 21, 1965, found him guilty and imposed a $100 fine, to which the trial judge added six months in the county jail.

■ September 15, 1964, two detectives[1] arrested Early, presumably an Alabama resident, ostensibly for driving a motor car with a Mississippi tag. Code 1940, T. 51, § 693, as amended. Coy Rathel, riding on the front seat, right hand side, of the car, pushed a paper bag under the front seat.

One officer questioned Early, the other Rathel.

After he had analyzed them, Nelson Grubbs, State Toxicologist, stationed at Mobile, identified the contents of the paper bag as being tablets of amphetamine salt. There were some 4,000 tablets of which the witness ground up ten for testing. He considered them representative of the bulk, although he took his ten tablets from only one of three bottles which the detectives had sequestered.

## II.

The only link in the evidence to connect Early with the amphetamine tablets came from a confession made at the Mobile Police Station.

We quote in part from the testimony of Mr. J. M. Romagnano:

"How long did you keep the defendant John Early in the room interrogating him?

"A. Oh, we didn't keep him long, 8 or 10 minutes, something like that, 5 or 10 minutes,—it wasn't long.

"Q. Before you started asking him questions he had been placed under arrest, had he not?

"A. Yes sir.

"Q. All right sir, at that time when you started asking him questions, did you advise him that any statements that he might make could be used against him?

"A. No sir.

"Q. Did you advise him that he had a right to an attorney before he made any statements?

"A. No,—to be honest with you, at that time we didn't know that those things were in effect.

"Q. Then you did not advise him that he had a constitutional right not to make any statement?

"A. I did not.

"Q. And if he did, they could be used against him in a court of law?

"A. I did not.

"MR. COLEMAN: Thank you, that's all.

"MR. COLEMAN: Judge, I further object to any statements that might have been made by Mr. Early. It has been the law of this land long before the recent Supreme Court cases that the defendant had to at least be apprised of the fact that any thing he might say could be used against him. In this case, they didn't even advise him of his most basic elementary constitutional rights.

"THE COURT: Overruled. MR. COLEMAN: Exception.

"(Jury returned to the Jury Box)

"A. Mr. Romagnano, the last question I asked you I think referred to what was said by the defendant, under those circumstances, and in the room, and under the conditions you have testified about?

"A. I asked him how much he paid for the pills—

"MR. COLEMAN: I'm going to object on the grounds that it is incompetent, irrelevant, immaterial, improper predicate

---

1. They had a warrant issued to search Early's person, State's Exhibit No. 1.

has been laid, and there is no showing that the defendant was apprised of his constitutional rights not to make a statement.

"THE COURT: Overruled. MR. COLEMAN: Exception.

"A. He said $25.00 a bottle.

"Q. Anything else?

"A. I asked him who he was going to sell them to, and he said he was going to sell them to Coy Rathel.

"Q. That was the companion he had?

"A. Yes sir.

"Q. Was Coy Rathel in the room at that time?

"A. No, he was in the other room.

"Q. But this man [defendant] did admit that he had paid $25.00 a bottle for them?

"A. Yes sir.

"Q. I'll ask you if you found attached to that bottle a prescription from anyone who purported to be a doctor of medicine, or anything like that?

"A. There was no prescription label on the bottle.

"Q. No prescription label,—are you certain of that?

"A. Yes sir.

"Q. You looked for it on the bottle?

"A. Yes sir.

"Q. Did the defendant produce, or offer to produce any prescription, or copy of a prescription, or any authorization of any type from a medical doctor?

"A. No sir, he did not.

"Q. Did he refer to any doctor, or refer to any prescription in his conversation with you?

"A. No sir, he did not.

"Q. And as far as you personally know, Dr. Grubbs still has the evidence about which you testified, the bottles of pills, is that right?

"A. Yes sir."

 The Supreme Court of Alabama's decision in Mathis v. State, Ala., 189 So.2d 564, was to the effect that in trials had before June 13, 1966, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977, will not be applied unless it is shown that the defendant requested counsel before being interrogated. Here no such request appears of record. See also, Philpot v. State, ante p. 326, 190 So.2d 293.

Rathel, by pushing the sack of tablets back under his seat, was prima facie in possession of them. Hence, any defect in the warrant to search Early's person was immaterial.

The judgment below is due to be

Affirmed.