213 So.2d 369

**Willie Gray GARRISON**

v.

**STATE.**

**2 Div. 171.**

Court of Appeals of Alabama.

March 12, 1968.

Rehearing Denied April 16, 1968.

**464**

MacDonald Gallion, Atty. Gen., and Robt. P. Bradley, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Wm. Wayne Smith, Birmingham, for appellant.

This appellant stands convicted of the offense of assault with intent to murder. His punishment was fixed at imprisonment for a term of seven years.

The state's evidence tends to show that on January 2, 1966, at about 11:00 a. m., M. D. King, a highway patrolman, while on routine patrol, came upon a car that was stopped on the road. He stopped and helped the two Negro men there move the car to the edge of the roadway and stayed there while they were fixing a flat tire.

During this time a brown 1958 Chrysler came by at a "pretty high speed," and the officer attempted to flag it down but it did not stop. He jumped in the patrol car and pursued the Chrysler. It stopped a short distance away and he pulled the patrol car

in behind the Chrysler, stopped and turned on his red light. The defendant was driving the car and there was a woman with him named Hazel Harper Robinson.

Officer King asked defendant for his driver's license and while he was getting it out of his billfold the Robinson woman said, "You know who this is, and you know damn well he's got a driver's license."

After the defendant handed the driver's license to him, Officer King asked him to open the trunk of his car. The woman said, "Shoot that S.O.B." The driver and his companion appeared to be in a drunken condition.

The woman handed defendant a pistol and he took it. As defendant "came around" with the pistol in his direction, Officer King dropped the driver's license in the Chrysler and ran around to the back of it. While doing so he noticed the back seat was out of the car and a rifle was lying on the floor board. As Officer King got in his car defendant appeared to be picking up the rifle.

The Chrysler then drove off and Officer King turned around and drove down the road. He then radioed Trooper Duck who was patrolling in the area to come to his assistance. Trooper Duck arrived shortly thereafter and Officer King got three shotgun shells from him to use in the shotgun King had in his car. Duck and King then separated and started looking for the Chrysler. While King was searching for the automobile he heard some shots. At about this time he saw the Chrysler sitting off the road up on a little hill. King said the shots were being fired in that area and the bullets were "whizzing" near him. King then called Duck to come to where he was. Before Duck got there the Chrysler came out of the woods behind a pulpwood truck and turned left toward Mississippi. King followed it, but not too closely. In a few minutes Duck caught up to King and King got in Duck's car. They gave chase with the

red light flashing. King testified he fired at the tires and the woman in the Chrysler returned the fire with a rifle. Shots were also coming from the driver's side of the car. Defendant was driving. After the exchange of shots the Chrysler increased its speed and so did the patrol car. At times the speed of the patrol car exceeded 100 miles per hour. All of the shooting just described took place in Sumter County, Alabama.

The chase continued into Mississippi where the patrol car lost the Chrysler near Whynot, Mississippi. They proceeded to the intersection of highway 19 and turned around there and went back toward Whynot. They passed a house and shots rang out from the direction of the house. A general alarm had been put out and in a few minutes several Mississippi law enforcement officers arrived and defendant came out to his mailbox, with a pistol in his belt. The woman who was in the Chrysler with defendant was standing there with a rifle.

For the defendant, Otto Robinson a garage owner in the community where defendant lived testified that on the Tuesday prior to January 2, 1966, he had occasion to work on defendant's 1958 Brown Chrysler. Hazel Robinson came to the garage with defendant and picked up some spent shells for a 22 rifle and put them in a small box, along with some spent 38 caliber shells on the front floorboard of defendant's car. On January 2 ,1966, between 11:15 and 11:30 A. M., defendant and Hazel Robinson were again in his shop; that defendant arrived from the direction of Alabama and left headed back in the direction of Alabama. He saw no bullet holes in defendant's automobile on either occasion.

James Sutter, a lifelong resident of the Whynot community, testified he was with the County Patrol of Lauderdale County, Mississippi; that he was familiar with all the roads in the area and had been driving over them for twenty years; that the road on which the shooting was alleged to have occurred was part gravel and part dirt and

was extremely curvy and dangerous; that a safe speed would not be more than 20 to 25 miles; that in his judgment the top speed that could be attained on that road would be 40 miles per hour.

Mrs. Charles Ivy testified she lived a mile west of defendant; that on January 2, 1966, two Alabama State Troopers came to her house and asked if she had seen defendant's brown Chrysler pass her house, that they were chasing him. She told them where defendant lived. She did not hear any shots from the direction of defendant's home prior to the arrival of the troopers.

Orange Ray testified he lived on the road in question in Sumter County; that between 11:00 and 12:00 noon on January 2, 1966, he saw defendant come down the highway in front of his house following a pulpwood truck driven by a Negro male; that defendant was driving at a slow rate of speed and he did not see any state trooper's automobile behind him.

Louis Brooks testified he lived on the Liberty Church road; that on January 2, 1966, his car was stalled on this road and a truck was pushing his car; that he heard something like a backfire and defendant's car passed him; that he heard several shots fired and he pulled to the side of the road. Bullets were flying everywhere and he lay down in the car. He saw the troopers fire one shot but didn't see any shots fired by defendant or Hazel Robinson and saw no weapons in the car. This shooting took place in Mississippi.

Curtis Hill testified he lived in Toomasuba, Mississippi; that on January 2, 1966, while he, Robert Curry and Willie Cleve Hill were traveling along the Bronson Road in Sumter County, Alabama, they had a puncture on the right front tire of their automobile; that he pulled the car off on the side of the road and left his companions with the car while he started walking to his mother's house to get another tire; that after he was about fifty yards down the road he saw Trooper King pull up behind his parked car and get out. Then he saw defendant come past his car and stop about 150 yards beyond it; that Trooper King went up to defendant's car, then went back and got in the patrol car, turned back down the road at a normal rate of speed; that defendant first started on down the road in the direction in which he had been traveling. However, after a short distance he also turned around and started in the opposite direction at a normal speed. The witness did not see defendant with a weapon, but the closest he got to him was about fifty yards.

Ollis Garrison testified he lived at Toomasuba, Mississippi, on the Bronson Road; that about 11:30 on the morning of January 2, 1966, he saw defendant pass his house following a pulpwood truck traveling at about 20 miles per hour. A few minutes later he saw a patrol car come by, but he heard no shooting along the highway.

James Fuller testified he lived along the Liberty Church Road about three miles west of the Alabama–Mississippi line. The road in front of his house is a straight stretch that extends about one-quarter of a mile and just east of his house is a steep hill with three sharp curves in it. At approximately 12:00 noon on January 2, 1966, he saw the defendant pass his house driving a 1958 brown Chrysler, followed by an Alabama state trooper's automobile; that he saw the troopers fire two shots into the rear end of defendant's automobile, but did not see any shots come from the Chrysler and didn't see any weapons in it. The cars were traveling 45 to 50 miles per hour and that rate of speed is the fastest anyone could possibly travel the Liberty Church Road. A few minutes after defendant and the troopers passed he saw defendant's pulpwood truck pass his home, driven by a Negro man.

Parnell Willis, of Whynot, Mississippi, testified that on January 2, 1966, at approximately 11:30 a. m., he went to defendant's house to wait for his wife, who was employed in defendant's home. The defendant arrived shortly thereafter and he and

defendant put a battery and battery jumper cable in defendant's automobile and proceeded into Alabama to pick up a truck. When defendant arrived there were no bullet holes in his 1958 brown Chrysler. When they got to the Bronson road the defendant pulled his car off onto an old logging road and they walked back into the woods to get defendant's pulpwood truck started with the jumper cable. After the truck was started he pulled it out into the road and started toward Mississippi with defendant following closely in his Chrysler; that defendant stayed behind the logging truck and never passed it until they were about a mile and a half inside the Mississippi line. At the time defendant passed him there was a car and a pickup truck directly in front of the truck he was driving. He was traveling about 25 miles per hour and defendant was traveling 35 to 40 miles per hour when he passed the truck. He stated he never saw defendant or Hazel Robinson shoot any weapons and he did not hear any shooting.

The defendant recalled Officer M. D. King for further cross examination. He stated that from the Bronson Road to the intersection of Liberty Church Road he was shot at on two occasions; there were about three shots fired at him from the woods and defendant's car was stopped along the Bronson Road once and a shot was fired. Mr. Robinson fired one of the shots but he couldn't see who fired the others.

Willie Gray Garrison, the defendant, testified he lived in the Whynot community, Lauderdale County, Mississippi; that he was in the logging business; that prior to Christmas of 1965, he had left his truck on an old logging road just off the Bronson Road in Sumter County and the truck was parked a few hundred yards from where Trooper King stopped him on January 2, 1966. On that day he was going to get his truck and bring it back to Mississippi to get it ready for hauling logs the following Monday. Hazel Robinson went with him

to drive the car back while he drove the truck. As he left home he traveled one mile east on old highway 19, turned left on the Whynot Old Town Road and proceeded due north until he turn east on the Liberty Church Road. He turned right on the Kinderbish Road and finally turned left on the Bronson Road and headed in a northerly direction. After he had traveled on the Bronson Road for about a mile and a half he saw a green automobile on the right side of the road. At this time he was slowing down to turn onto the old logging road and at that time he saw Trooper King flagging him to stop. He stopped and showed his driver's license to Trooper King and the officer then walked to the back of his car. Defendant asked where he was going with his driver's license, and the officer came to the driver's side and said. "I'm keeping the license until you get out and open the trunk." The witness stated, "Well I want my license." I said, "As far as me getting out and opening the trunk," I said, "I'm not going to get out and open it. All you have to do is push a button and it will open." I said, "As far as my part, if you've got the right to look in there, all you've got to do is push a button." During this time Hazel Robinson was putting make-up on her face and dropped her compact on the front floor board of the automobile; that Trooper King started his patrol car and drove back to where the two Negroes were at the green automobile. The defendant turned his car around and went back to the green car and had a short conversation with the Negroes; that defendant turned his car back around and went up to the logging road and parked his car off to the side of the road. The truck would not start and he started home to get a battery and jumper cable to start the truck. He stopped at Robinson's garage and had a conversation with Mr. Robinson concerning the truck. He then proceeded to his home in Mississippi and he and Parnell Willis put the jumper cable and battery in defendant's automobile and went back to the logging road in Alabama. It was about an hour from the first time he ar-

rived at the logging road until he arrived back at the logging road the second time with the battery and cable. After they got the truck started they proceeded toward Mississippi with defendant following the pulpwood truck driven by Parnell Willis; that they traveled at the rate of 20 to 25 miles per hour up the Bronson Road to the Kinderbish Road, took a right on the Kinderbish Road and traveled about three-fourths of a mile and took a left on Liberty Church Road. No shots were fired on the Bronson Road or the Kinderbish Road and no state trooper was in sight on either road; that he heard no shots and did not observe any state troopers until they were about a half mile across the Mississippi line. He was still behind the logging truck when he heard a popping sound, which he at first thought was a backfire from the truck. However, he soon heard a second popping sound and realized someone was shooting at him as a bullet ripped through the rear end of his automobile and shattered the sun visor. He turned around and saw the trooper's car, but there was no red light flashing and the siren was not turned on. Defendant pulled around the logging truck and picked up speed. He also passed a pick-up truck pushing an automobile. Other shots were fired at his automobile but neither he nor Hazel Robinson ever fired any shots in the direction of the state troopers.

■ The evidence presented questions for the jury to determine and was sufficient, if believed by the jury to the requisite degree, to sustain the verdict. There was no error in denying the motion to exclude the state's evidence, nor in refusing the motion for a new trial on the grounds of the insufficiency of the evidence to support the judgment.

■ The court committed no error in allowing the witness King to state that the bullets shot from the woods appeared to be coming in his direction. Thacker v. State, 225 Ala. 1, 142 So. 580, and cases there cited. See also Hornsby v. Commonwealth, 305 Ky. 747, 205 S.W.2d 338. The witness testified he had served in the armed forces and had had experience with the sound of rifles and other firearms and with hearing bullets going through the air and from this experience was able to form an opinion as to where they were coming from and the direction in which they were going.

■ The defendant stated:

" * * * So then I pulled up and backed around and went back down there where these colored people were, and asked them, I says, 'I wonder why the Patrolman acted so peculiar.' I said, 'what was the matter with him?' They said they didn't know. I stood there and talked to them a few minutes * * *."

This conversation was properly excluded. It was a self serving statement, made after the patrolmen had left the scene, when he first stopped defendant to check his driver's license and was not a part of the res gestae. Cranmore v. State, 41 Ala.App. 276, 129 So.2d 121.

■ Appellant's contention that it was reversible error to deny his motions to quash the venire because of the systematic exclusion of women from the grand and petit juries of Sumter County is without merit. Philpot v. State, 43 Ala.App. 326, 190 So.2d 293. This case was tried before the legislature amended the statutes so as to provide for women serving in juries in Alabama.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.

CATES, Judge (concurring specially).

Consistently with my dissent in Shine **v.** State, ante p. 171, 204 So.2d 817, I concur in the instant case.